No. 22-5807

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

**STATE OF TENNESSEE, *ET AL.*,**
*Plaintiffs-Appellees*,

and

**ASSOCIATION OF CHRISTIAN SCHOOLS, *ET AL.*,**
*Intervenors-Appellees*,

v.

**DEPARTMENT OF EDUCATION, *ET AL.*,**
*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Eastern District of Tennessee, Knoxville Division

---

***AMICI CURIAE* BRIEF OF AMERICAN CIVIL LIBERTIES UNION, ACLU FOUNDATION OF TENNESSEE, GLBTQ LEGAL ADVOCATES & DEFENDERS, LAMBDA LEGAL DEFENSE & EDUCATION FUND, INC., HUMAN RIGHTS CAMPAIGN, NATIONAL CENTER FOR LESBIAN RIGHTS, NATIONAL WOMEN'S LAW CENTER, TRANSGENDER LAW CENTER, AND TRANSGENDER LEGAL DEFENSE & EDUCATION FUND, IN SUPPORT OF DEFENDANTS-APPELLANTS AND REVERSAL**

---

Joshua A. Block
AMERICAN CIVIL LIBERTIES UNION
 FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Phone: (212) 549-2593

*Counsel for Amici Curiae*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 22-5807                    Case Name: Tennessee, et al. v. Dep't of Educ. et al.

Name of counsel: Joshua A. Block

Pursuant to 6th Cir. R. 26.1, American Civil Liberties Union
                              *Name of Party*
makes the following disclosure:

1.  Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
    identity of the parent corporation or affiliate and the relationship between it and the named
    party:

> No.

2.  Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
    in the outcome?  If yes, list the identity of such corporation and the nature of the financial
    interest:

> No.

### CERTIFICATE OF SERVICE

I certify that on _____December 22, 2022_____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Joshua A. Block
125 Broad St., Floor 18
New York, NY 11231

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 22-5807 _____   Case Name: Tennessee, et al. v. Dep't of Educ. et al.

Name of counsel: Joshua A. Block _____

Pursuant to 6th Cir. R. 26.1, ACLU Foundation of Tennessee _____
                                                *Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ December 22, 2022 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Joshua A. Block _____
125 Broad St., Floor 18 _____
New York, NY 11231 _____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 22-5807                    Case Name: Tennessee, et al. v. Dep't of Educ. et al.

Name of counsel: Joshua A. Block

Pursuant to 6th Cir. R. 26.1, Lambda Legal Defense & Education Fund, Inc.
                                    *Name of Party*
makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No.

## CERTIFICATE OF SERVICE

I certify that on _____ December 22, 2022 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Joshua A. Block
125 Broad St., Floor 18
New York, NY 11231

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 22-5807          Case Name: Tennessee, et al. v. Dep't of Educ. et al.

Name of counsel: Joshua A. Block

Pursuant to 6th Cir. R. 26.1, GLBTQ Legal Advocates & Defenders
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

---

## CERTIFICATE OF SERVICE

I certify that on _____ December 22, 2022 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Joshua A. Block
125 Broad St., Floor 18
New York, NY 11231

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 22-5807 _____        Case Name: Tennessee, et al. v. Dep't of Educ. et al.

Name of counsel: Joshua A. Block _____

Pursuant to 6th Cir. R. 26.1, National Center for Lesbian Rights _____
                              *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ December 22, 2022 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Joshua A. Block _____
125 Broad St., Floor 18 _____
New York, NY 11231 _____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 22-5807          Case Name: Tennessee, et al. v. Dep't of Educ. et al.

Name of counsel: Joshua A. Block

Pursuant to 6th Cir. R. 26.1, National Women's Law Center
                                  *Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ December 22, 2022 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Joshua A. Block
125 Broad St., Floor 18
New York, NY 11231

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 22-5807          Case Name: Tennessee, et al. v. Dep't of Educ. et al.

Name of counsel: Joshua A. Block

Pursuant to 6th Cir. R. 26.1, Transgender Legal Defense and Education Fund
                             *Name of Party*
makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _____December 22, 2022_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Joshua A. Block
125 Broad St., Floor 18
New York, NY 11231

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 22-5807            Case Name: Tennessee, et al. v. Dep't of Educ. et al.

Name of counsel: Joshua A. Block

Pursuant to 6th Cir. R. 26.1, Human Rights Campaign
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No.

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ December 22, 2022 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Joshua A. Block
125 Broad St., Floor 18
New York, NY 11231

---

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations
# and Financial Interest

Sixth Circuit
Case Number: 22-5807 _____   Case Name: Tennessee, et al. v. Dep't of Educ. et al.

Name of counsel: Joshua A. Block _____

Pursuant to 6th Cir. R. 26.1, Transgender Law Center _____
*Name of Party*

makes the following disclosure:

1.   Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the
     identity of the parent corporation or affiliate and the relationship between it and the named
     party:

No.

2.   Is there a publicly owned corporation, not a party to the appeal, that has a financial interest
     in the outcome?  If yes, list the identity of such corporation and the nature of the financial
     interest:

No.

CERTIFICATE OF SERVICE

I certify that on _____ December 22, 2022 _____ the foregoing document was served on all
parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not,
by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Joshua A. Block _____
125 Broad St., Floor 18 _____
New York, NY 11231 _____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs,
immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

TABLE OF CONTENTS.........................................................................ii

TABLE OF AUTHORITIES ...............................................................ii

INTEREST OF *AMICI* ......................................................................1

INTRODUCTION .................................................................................1

ARGUMENT ........................................................................................4

    I.     In Evaluating Plaintiffs' Likelihood of Success, the District Court Overlooked Binding Sixth Circuit Precedent............................................4

    II.    The District Court Abused Its Discretion by Allowing States From Other Circuits to Evade Their Home-Circuit Precedent. ...................................10

    III.   The District Court Abused Its Discretion by Failing to Consider the Preliminary Injunction's Harm to LGBTQ Workers and Students. .......15

CONCLUSION ....................................................................................19

CERTIFICATE OF COMPLIANCE.......................................................21

CERTIFICATE OF SERVICE .............................................................22

# TABLE OF AUTHORITIES

## Cases

*A.M. by E.M. v. Indianapolis Pub. Sch.*,
 No. 22-CV-01075-JMS-DLP, 2022 WL 2951430 (S.D. Ind. July 26, 2022) ......14
*Am. Coll. of Pediatricians v. Becerra*,
 No. 1:21-CV-195, 2022 WL 17084365 (E.D. Tenn. Nov. 18, 2022) ..................7
*B.E. v. Vigo Cty. Sch. Corp.*,
 No. 2:21-CV-00415-JRS-MG, 2022 WL 2291763 (S.D. Ind. June 24, 2022) ....14
*B.P.J. v. W. Va. State Bd. of Educ.*, 550 F. Supp. 3d 347 (S.D.W. Va. 2021) ........13
*Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*,
 208 F. Supp. 3d 850 (S.D. Ohio 2016) ...................................................................6
*Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020) ............................................ passim
*Carver v. Knox Cty.*, 887 F.2d 1287 (6th Cir. 1989) ..........................................3, 11
*Darrah v. City of Oak Park*, 255 F.3d 301 (6th Cir. 2001) .....................................8
*Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629 (1999) ........................................8
*Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217 (6th Cir. 2016).......................... passim
*Doe v. Snyder*, 28 F.4th 103, (9th Cir. 2022)..........................................................15
*EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*,
 884 F.3d 560 (6th Cir. 2018) ........................................................................ passim
*Feller v. Brock*, 802 F.2d 722 (4th Cir. 1986) ....................................................3, 11
*Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271 (11th Cir. 2021) ...........12
*Ga.-Pac. Consumer Prod. LP v. von Drehle Corp.*,
 781 F.3d 710 (4th Cir. 2015) ............................................................................. 12, 15
*Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020).................. 13, 18
*Maryville Baptist Church, Inc. v. Beshear*, 977 F.3d 561 (6th Cir. 2020) ...............7
*McGirr v. Rehme*, 891 F.3d 603 (6th Cir. 2018) .................................................3, 15
*Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021) ..............................................8
*Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318 (6th Cir. 2021).....................................8
*Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104 (4th Cir. 2022) (en banc)..............13
*Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*,
 769 F.3d 447 (6th Cir. 2014) ................................................................................17
*Priorities USA v. Nessel*, 860 F. App'x 419 (6th Cir. 2021) ....................................7
*SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370 (4th Cir. 2017)...... 16, 19
*Smith v. City of Salem*, 378 F.3d 566 (6th Cir. 2004)..........................................6, 10
*United States v. AMC Entm't, Inc.*, 549 F.3d 760 (9th Cir. 2008) ..........................12
*W. Gulf Mar. Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721 (5th Cir. 1985)........12

*Wallace v. FedEx Corp.*, 764 F.3d 571 (6th Cir. 2014)............................................7

*Weinberger v. Romero–Barcelo*, 456 U.S. 305 (1982)............................................16

*Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd.. of Educ.*,
    858 F.3d 1034 (7th Cir. 2017) ...................................................... 14, 18

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008)......................................16

## Statutes

20 U.S.C. § 1681 ...........................................................................................1

28 U.S.C. § 1404(a) ...................................................................................3, 11

42 U.S.C. § 2000e ..........................................................................................1

## Other Authorities

Brad Sears *et al.*, Williams Inst. *LGBT People's Experiences of Workplace
    Discrimination and Harassment* (2021) .................................................18

Gabriel Murchison *et al.*, *School restroom and locker room restrictions and sexual
    assault risk among transgender youth*, Pediatrics (2019) ....................................17

GLSEN *et al.*, *Separation and Stigma: Transgender Youth and School Facilities*
    (2017) .................................................................................................17

James Herman *et al.*, *Report of the 2015 US Transgender Survey*, National Center
    for Transgender Equality (2016) .........................................................18

Kristie L. Seelman, *Transgender Adults' Access to College Bathrooms and
    Housing and the Relationship to Suicidality*, 63 J. of Homosexuality 1378
    (2016)..................................................................................................17

Michelle M. Johns, I, Trends in violence victimization and suicide risk by sexual
    identity among high school students, 69 Morbidity and Mortality Weekly Report
    19 (2020)..............................................................................................17

National Academies of Sciences, Engineering, and Medicine, *Understanding the
    Well-Being of LGBTQI+ Populations* (2020), Washington, DC: The National
    Academies Press .................................................................................17

## INTEREST OF *AMICI*[1]

*Amici* are legal organizations that litigate to protect LGBTQ people and others from discrimination based on sex, sexual orientation, and transgender status under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* Together, *amici* have been deeply involved in litigating these issues in the Supreme Court and in every circuit in which the Plaintiff States are located.[2] *Amici* have a strong interest in ensuring that these precedents are properly followed, and that States cannot evade their home circuits' precedents by forum shopping to other jurisdictions.

## INTRODUCTION

The decision below is a "case study" in how States have increasingly engaged in flagrant forum shopping to evade their home circuits' precedents protecting LGBTQ people from discrimination. In addition to the government's powerful

---

[1] The parties have consented to the filing of this brief. No party's counsel authored the brief in whole or in part; no party or party's counsel contributed money to fund its preparation or submission; and no person other than *amici*, their members, or their counsel made monetary contributions to its preparation or submission.

[2] *See, e.g.*, *Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020); *Doe v. Snyder*, 28 F.4th 103 (9th Cir. 2022); *Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021); *EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020); *Whitaker ex rel. Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034 (7th Cir. 2017); *Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217 (6th Cir. 2016).

arguments for dismissing this case based on lack of standing, ripeness, or final agency action, *amici* write separately to highlight several ways in which the district court's issuance of a preliminary injunction constituted a particularly egregious abuse of discretion.

*First*, with respect to its assessment of Plaintiffs' likelihood of success on the merits, the district court reasoned that guidance documents from the Department of Education, the Department of Justice, and the Equal Employment Opportunity Commission regarding the rights of LGBTQ people must go through notice-and-comment rulemaking because those documents interpret Title VII or Title IX in a manner that goes beyond existing Sixth Circuit precedent. *See* Op. 40-43, R. 86, Page ID # 1981-1984. But, in reaching that conclusion, the district court inexplicably overlooked this Circuit's controlling precedents in *Dodds v. United States Department of Education*, 845 F.3d 217 (6th Cir. 2016), and *EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560 (6th Cir. 2018) ("*Harris Funeral Homes*"), *aff'd sub nom. Bostock v. Clayton Cty.*, 140 S. Ct. 1731 (2020). For that reason alone, the district court's decision must be reversed.

*Second*, the district court violated longstanding principles of judicial comity by allowing States in the Fourth, Seventh, and Ninth Circuits to evade binding precedent in their home circuits. Ignoring its obligation to avoid interfering with the established judicial pronouncements of other circuits, the district court issued an

injunction preventing the federal government from applying Title IX guidance to South Carolina and West Virginia in accordance with Fourth Circuit precedent, from applying Title IX guidance to Indiana in accordance with Seventh Circuit precedent, and from applying Title IX guidance to Alaska, Arizona, Idaho, and Montana in accordance with Ninth Circuit precedent, creating needless conflict and confusion in the process. Equity required the district court to sever the claims of States within the Fourth, Seventh, and Ninth Circuits pursuant to Federal Rule of Civil Procedure 21, and to transfer those claims pursuant to 28 U.S.C. § 1404(a) to be resolved in accordance with the precedent in their home circuits. *Cf. Carver v. Knox Cty.*, 887 F.2d 1287, 1293 (6th Cir. 1989) (exercising this Court's supervisory power and instructing the district court to sever claims and transfer them to another district); *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986) (explaining that district court should transfer venue in "the interest of justice" for "the avoidance of conflict between coordinate courts").

*Third*, in determining whether to issue a preliminary injunction, the district court failed to properly consider "whether the injunction would cause substantial harm to third parties" and "whether the injunction would serve the public interest." *McGirr v. Rehme*, 891 F.3d 603, 610 (6th Cir. 2018). Instead, the district court relied on its faulty assessment of Plaintiffs' likelihood of success to summarily conclude that the government has no legitimate interest in enforcing illegal guidance and that

3

the public interest is served by faithful application of the rule of law. *See* Op. 44-46, R. 86, Page ID # 1985-1987. The district court applied the wrong legal standard and abused its discretion by failing to consider the harms its injunction would impose on third parties, including LGBTQ workers and students in the Plaintiff States, if federal agencies are enjoined from enforcing Title VII and Title IX in accordance with existing circuit precedents.[3]

## ARGUMENT

### I.    In Evaluating Plaintiffs' Likelihood of Success, the District Court Overlooked Binding Sixth Circuit Precedent.

The Plaintiffs' likelihood of success is a question of law subject to *de novo* review. In the decision below, the district court concluded that the guidance documents at issue in this case were substantive legislative rules because they "advance *new* interpretations of Titles VII and IX and impose *new* legal obligations on regulated entities." Op. 31, R. 86, Page ID # 1972. According to the district court, "until the Sixth Circuit or the Supreme Court recognizes the opinions expressed in"

---

[3] The parties appear to dispute the scope of the injunction. *Compare* Notice of Compliance, R. 97, Pg. ID # 2057-2060, *with* Response to Notice, R. 99, Pg. ID # 2398-2406. According to the Plaintiff States, the injunction not only prohibits Defendants from enforcing the guidance documents themselves, but also broadly prohibits the federal agencies from "engag[ing] in investigations, enforcement, or administrative actions against Plaintiff States that are 'consistent with' agency positions 'in the challenged documents.'" Response to Notice at 3, R. 99, Pg. ID # 2400. For purposes of this brief, *amici* assume for the sake of simplicity that the injunction is interpreted in accordance with Plaintiffs' position without conceding that interpretation is, in fact, correct.

the challenged guidance documents, those documents constitute new legislative rules, not merely interpretative guidance of existing law. Op. 42 n.17, R. 86, Page ID # 1983.

But in purporting to describe the contours of existing law in this area, the district court inexplicably overlooked the leading Sixth Circuit precedents in *Dodds* and *Harris Funeral Homes*. Because the challenged guidance documents are consistent with *Dodds* and *Harris Funeral Homes*, Plaintiffs cannot demonstrate a likelihood of success on the merits.

### A.    The District Court Overlooked *Dodds*.

The district court concluded that the Department of Education and Department of Justice's guidance documents exceeded the bounds of existing Sixth Circuit precedent by (a) "expand[ing] the footprint of Title IX's 'on the basis of sex' language" to include discrimination based on transgender status, and (b) stating that the Departments will investigate situations in which a principal prevents a transgender girl from using the girls' restroom or trying out for girls' sports teams. Op. 41, R. 86, Page ID # 1982. But the district court overlooked this Circuit's pre-existing precedent in *Dodds*, which already applied Title IX to protect students from discrimination based on transgender status, including with respect to using restrooms consistent with their gender identity.

5

*Dodds* was a published opinion denying a stay pending appeal. A district court had issued a preliminary injunction based on Title IX and the Equal Protection Clause on behalf of a transgender girl who had been excluded from using the same common restrooms as other girls. *See Bd. of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 865-77 (S.D. Ohio 2016). In denying the school district's motion for a stay pending appeal, *Dodds* recognized that "[t]he crux of this case is whether transgender students are entitled to access restrooms for their identified gender rather than their biological gender at birth" under Title IX and the Equal Protection Clause. 845 F.3d at 221. *Dodds* then concluded that the school district had failed to make "its required showing of a likelihood of success on appeal" because "[u]nder settled law in this Circuit, gender nonconformity, as defined in *Smith v. City of Salem*, is an individual's 'fail[ure] to act and/or identify with his or her gender'" assigned at birth and "'[s]ex stereotyping based on a person's gender non-conforming behavior is impermissible discrimination.'" *Id.* (quoting *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004)).[4]

Under 6 Cir. R. 32.1, the published opinion in *Dodds* is binding precedent on all subsequent panels, including future merits panels. *See Maryville Baptist Church,*

---

[4] *Dodds* also concluded that the school district would not suffer irreparable harm by allowing the girl who is transgender to use the common girls' restroom, *id.* at 221, that the girl who is transgender would suffer irreparable harm if she were excluded from the restroom, *id.* at 221-22, and that the injunction allowing the girl who is transgender to use the restroom was in the public interest, *id.* at 222.

*Inc. v. Beshear*, 977 F.3d 561, 563 (6th Cir. 2020) (describing prior published decisions granting stays and injunctions pending appeal based on "legal assessments of the claimants' free exercise rights" as "binding in the circuit"); *Priorities USA v. Nessel*, 860 F. App'x 419, 420 (6th Cir. 2021) (holding that published stay order concluding that legislature had standing was binding on the merits panel). "Later panels cannot simply choose to disregard [published] motions-panel decisions, and if a litigant wishes to challenge a motions panel's decision on a dispositive motion, the proper course of action is to request panel rehearing or rehearing en banc." *Wallace v. FedEx Corp.*, 764 F.3d 571, 583 (6th Cir. 2014). The district court was, therefore, "bound by [*Dodd's*] reasoning." *Am. Coll. of Pediatricians v. Becerra*, No. 1:21-CV-195, 2022 WL 17084365, at *13 n.3 (E.D. Tenn. Nov. 18, 2022).[5]

*Dodds* thus established in this Circuit that discrimination based on a person's "fail[ure] to act and/or identify with his or her gender" assigned at birth is sex discrimination under Title IX. In summarily concluding that the challenged guidance

---

[5] Moreover, even if *Dodds* were narrowly construed as being precedential only with respect to forecasting that the school district was *unlikely* to prevail in its defense, *Dodds*' forecasting would still foreclose a preliminary injunction for the Plaintiff States in this case. As the parties seeking a preliminary injunction, Plaintiffs bear the burden of showing they are likely to succeed on the merits of their argument that Title IX does not protect transgender students from discrimination, including discrimination with respect to the use of restrooms. If the school district in *Dodds* was unlikely to succeed in making that argument, then Plaintiffs in this case are unlikely to succeed as well. *Dodds* is also binding with respect to its analysis of whether allowing transgender students to use the restrooms would impose irreparable harm and with respect to its assessment of the public interest.

improperly "expand[ed] the footprint of Title IX's 'on the basis of sex' language" to include discrimination based on transgender status (Op. 41, R. 86, Page ID # 1982), the district court failed to acknowledge *Dodds*. Instead, the district court quoted *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021), for the proposition that "*Bostock* extends no further than Title VII." Op. 40, R. 86, Page ID # 1981. But *Pelcha* was not analyzing the scope of Title IX or other statutes prohibiting sex discrimination; it was addressing whether *Bostock*'s standard of "but for" causation was sufficient to establish age discrimination under the ADEA. Nothing in *Pelcha* purports to disturb this Court's pre-existing decision in *Dodds*, and to the extent that there is any conflict between the two decisions, *Dodds* must control. *See Darrah v. City of Oak Park*, 255 F.3d 301, 310 (6th Cir. 2001) ("[W]hen a later decision of this court conflicts with one of our prior published decisions, we are still bound by the holding of the earlier case.").[6]

Dodds also established in this Circuit that Title IX's prohibition on discrimination includes protection for transgender students' ability to "access

---

[6] The district court also quoted dicta from a footnote in *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021), for the proposition that "it does not follow that principles announced in the Title VII context automatically apply in the Title IX context." Op. 40, R. 86, Page ID # 1981. But in the body of its opinion, *Meriwether* did not rely on that dicta to declare that Title IX does not prohibit discrimination based on transgender status. Instead, *Meriwether* held that the conduct at issue was not "serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." 992 F.3d at 511 (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 652 (1999)).

restrooms for their identified gender rather than their biological gender at birth." 845 F.3d at 221. The Department of Education's guidance that "the Department can investigate a principal barring a high school transgender girl . . . from entering the girls' restroom" (Op. 41, R. 86, Page ID # 1982) faithfully implements that holding. In light of *Dodds*, the Plaintiff States have no likelihood of success in arguing that the Department of Education's guidance regarding transgender students' use of the restroom exceeded the bounds of Sixth Circuit precedent.[7]

## B.    The District Court Overlooked *Harris Funeral Homes*.

The district court also concluded that the EEOC's guidance regarding transgender employees' use of restrooms, locker rooms, and dress codes exceeded the scope of existing precedent because *Bostock* reserved those questions for future cases. Op. 42, R. 86, Page ID # 1983. But while the Supreme Court has not resolved how Title VII's protections apply to those issues, *this Court* has already done so.

As already noted, *Dodds* held that excluding transgender people from restroom facilities consistent with their gender identity is a form of impermissible sex discrimination under Title IX.  Because *Dodds* applied the same standard used by this Court in Title VII cases, *see Smith*, 378 F.3d at 575, the decision applies with equal force to transgender employees' use of the restrooms under Title VII.

---

[7] Although *Dodds* did not address the exclusion of transgender students from sports teams, its reasoning supports those aspects of the guidance as well.

9

This Court subsequently addressed the issue of dress codes in *Harris Funeral Homes*, which held that a funeral home violated Title VII by requiring a woman who is transgender to dress in accordance with the sex-specific dress code for men instead of the sex-specific dress code for women. This Court explained that "the Funeral Home may not rely on its [dress code] policy to combat the charge that it engaged in improper sex stereotyping when it fired [the employee] for wishing to appear or behave in a manner that contradicts the Funeral Home's perception of how she should appear or behave based on her sex." *Harris Funeral Homes*, 884 F.3d at 574.

*Harris Funeral Homes* remains binding precedent in this Circuit. Although *Bostock* did not address the issue of dress codes, its decretal language stated that "[t]he judgments of the Second and Sixth Circuits in Nos. 17-1623 and 18-107 are affirmed." 140 S. Ct. at 1754. Because the Supreme Court affirmed this Court's judgment instead of vacating it, the opinion continues to bind courts in this Circuit. And because the EEOC's guidance regarding dress codes is consistent with—and, indeed, mandated by—*Harris Funeral Homes*, Plaintiffs have no likelihood of success in arguing that the guidance exceeds the scope of established circuit precedent.

## II. The District Court Abused Its Discretion by Allowing States From Other Circuits to Evade Their Home-Circuit Precedent.

Even if the district court had correctly applied Sixth Circuit precedent, the district court would still have abused its discretion by imposing Sixth Circuit

precedent beyond its geographic borders, in direct conflict with the pre-existing precedent in many of the Plaintiffs States' home circuits. Although federal courts have the power to issue injunctions beyond their geographic borders, the courts' equitable powers must be exercised consistent with longstanding principles of judicial comity. And under those longstanding principles, the district court should have severed the claims of States within the Fourth, Seventh, and Ninth Circuits pursuant to Federal Rule of Civil Procedure 21, and transferred those claims "in the interest of justice" pursuant to 28 U.S.C. § 1404(a) to be resolved in accordance with their home circuits' precedents. The district court abused its discretion by failing to do so. *Cf. Carver*, 887 F.2d at 1293 (exercising this Court's supervisory power and instructing the district court to sever claims and transfer them to another district); *Feller*, 802 F.2d at 729 n.7 (explaining that the district court should transfer venue in "the interest of justice" for "the avoidance of a conflict between coordinate courts").[8]

"The federal courts long have recognized that the principle of comity requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs" and to "avoid rulings which may trench upon the authority of sister courts." *W. Gulf Mar. Ass'n v. ILA Deep Sea Local*

---

[8] District courts retain the authority—and the responsibility—to initiate such transfers *sua sponte*. *See Carver*, 887 F.2d at 1291.

*24*, 751 F.2d 721, 728 (5th Cir. 1985). Judicial comity requires that "once a sister circuit has spoken to an issue, that pronouncement is the law of that geographical area," and "[c]ourts in [one circuit] should not grant relief that would cause substantial interference with the established judicial pronouncements of such sister circuits." *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 773 (9th Cir. 2008). For one circuit to "countenance an injunction" authorizing litigants in other circuits to engage in conduct prohibited by those circuits' precedents "would amount to a direct and unseemly affront to those courts" to the detriment and confusion of "litigants and others in those States." *Ga.-Pac. Consumer Prod. LP v. von Drehle Corp.*, 781 F.3d 710, 715-16 (4th Cir. 2015); *see also Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1285 (11th Cir. 2021) (criticizing district court in Louisiana for awarding injunctive relief to Florida that courts in the Eleventh Circuit had already denied).

Ignoring these principles, the district court granted an injunction allowing States in the Fourth, Seventh, and Ninth Circuits to defy their home circuits' precedents—and (under Plaintiffs' interpretation of the injunction) prohibited the federal agencies from enforcing those precedents to protect LGBTQ people in their respective jurisdictions. For example, South Carolina and West Virginia are located in the Fourth Circuit. Shortly after the Supreme Court's decision in *Bostock*, the Fourth Circuit held in *Grimm v. Gloucester County School Board*, 972 F.3d 586,

12

616-19 (4th Cir. 2020), that *Bostock*'s reasoning applies to Title IX and that excluding a boy who is transgender from using the common boys' restroom violated Title IX's prohibition on sex discrimination. The Fourth Circuit subsequently held that *Bostock* and *Grimm*'s reasoning also applies to dress codes under Title IX. *See Peltier v. Charter Day Sch., Inc.*, 37 F.4th 104, 130 (4th Cir. 2022) (en banc), *petition for cert. filed*, Sept. 14, 2022 (No. 22-238). And a district court applying Fourth Circuit precedent has also held—in a case in which West Virginia is a party—that *Bostock* and *Grimm*'s reasoning applies to the exclusion of a girl who is transgender from her middle school girls' cross-country team. *See B.P.J. v. W. Va. State Bd. of Educ.*, 550 F. Supp. 3d 347, 356-57 (S.D.W. Va. 2021).

The guidance documents enjoined by the district court are fully consistent with the Fourth Circuit's precedent in *Grimm* and *Peltier* and with the Southern District of West Virginia's decision in *B.P.J.* Indeed, the documents prominently cite to the *Grimm* decision. *See* Compl. Ex. A at 4, R. 1-2, Page ID # 44. But the district court in this case—sitting in the Eastern District of Tennessee—nevertheless allowed South Carolina and West Virginia to evade those decisions and enjoined the federal government from enforcing Title IX guidance against those States in accordance with Fourth Circuit precedent.

The district court's injunction similarly prohibits the federal government from enforcing Title IX guidance against Indiana in accordance with Seventh Circuit

13

precedent. The Seventh Circuit held in *Whitaker ex rel. Whitaker v. Kenosha Unified School District No. 1 Board. of Education*, 858 F.3d 1034, 1046-50 (7th Cir. 2017), that Title IX prohibits discrimination against transgender students and protects their ability to use restrooms consistent with their gender identity. A district court in the Southern District of Indiana has held that *Whitaker* also applies to transgender students' use of locker rooms. *See B.E. v. Vigo Cty. Sch. Corp.*, No. 2:21-CV-00415-JRS-MG, 2022 WL 2291763, at *3-5 (S.D. Ind. June 24, 2022), *appeal filed*, No. 22-2318 (7th Cir. July 26, 2022). And another district court—in a case in which Indiana is a party—has held that *Whitaker* extends to transgender students' participation in sports teams as well. *See A.M. by E.M. v. Indianapolis Pub. Sch.*, No. 22-CV-01075-JMS-DLP, 2022 WL 2951430, at *7-11. (S.D. Ind. July 26, 2022), *appeal filed*, No. 22-2332 (7th Cir. July 27, 2022). Yet, the district court in this case, sitting in the Eastern District of Tennessee, allowed Indiana to evade these decisions and enjoined the federal government from enforcing guidance against Indiana consistent with *Whitaker*.

The district court's injunction also prohibits the federal government from enforcing Title IX guidance against Alaska, Arizona, Idaho, and Montana in accordance with Ninth Circuit precedent. The Ninth Circuit held in *Doe v. Snyder*, 28 F.4th 103, 114 (9th Cir. 2022), that "[g]iven the similarity in language prohibiting sex discrimination in Titles VII and IX, we do not think *Bostock* can be limited" just

to Title VII. Yet, the district court's injunction effectively overrules the Ninth Circuit's decision by enjoining the Department of Education and the Department of Justice from enforcing Title IX guidance consistent with *Doe v. Snyder*.

If States within the Fourth, Sixth, or Ninth Circuits disagree with their home circuits' precedents, they can seek review from those courts sitting en banc or from the Supreme Court—not by forum shopping to the Eastern District of Tennessee for a second opinion. Countenancing such egregious forum shopping is "a direct and unseemly affront to those courts," *Ga.-Pac. Consumer Prod. LP.*, 781 F.3d at 716, and it undermines the ordinary and predictable rule of law.

## III.    The District Court Abused Its Discretion by Failing to Consider the Preliminary Injunction's Harm to LGBTQ Workers and Students.

Finally, the district court also abused its discretion by failing to consider the harm its preliminary injunction would impose on LGBTQ workers and students. "A district court considers four factors when deciding whether to grant a preliminary injunction: (1) the movant's chances of succeeding on the merits; (2) if the movant would likely be permanently harmed absent the injunction; (3) whether the injunction would cause substantial harm to third parties; and (4) whether the injunction would serve the public interest." *McGirr*, 891 F.3d at 610. In this case, however, the district court truncated its analysis of the third and fourth preliminary-injunction factors based on its erroneous conclusion that the Plaintiff States were likely to succeed on the merits of their claim. Instead of considering "whether the

injunction would cause substantial harm to third parties," *id.*, the district court summarily concluded that "Defendants do not have a legitimate interest in enforcing the guidance documents that Plaintiffs have shown are likely to be procedurally invalid." Op. 45, R. 86, Page ID # 1986. And instead of considering whether the preliminary injunction would harm members of the public, the district court summarily concluded that the public interest lies with "the correct application of the law." *Id.*

That was error. "An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24. (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)). In particular, "[d]irect effects on innocent third parties have frequently grounded courts' denials of injunctions." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 388 (4th Cir. 2017); *cf. Platt v. Bd. of Comm'rs on Grievances & Discipline of Ohio Sup. Ct.*, 769 F.3d 447, 454 (6th Cir. 2014) (emphasizing that "the district court balances four factors—not one—even in First Amendment cases").

Thus, instead of focusing exclusively on whether its injunction would harm the government, the district court was also required to consider the potential harm

that the injunction would impose on LGBTQ workers and students residing in the Plaintiff States. Research has shown that transgender students excluded from school facilities are more likely to report depression, suicidality, and sexual victimization; they are also likely to experience health problems from avoiding restrooms.[9] And, as a result of increased risk of violent victimization, lesbian, gay, and bisexual students also face increased risk of suicide compared to heterosexual students.[10] LGBTQ employees similarly face "stigma and unequal treatment in the workforce," including unequal pay, promotions, and hostile work environments.[11]

---

[9] *See* GLSEN *et al.*, *Separation and Stigma: Transgender Youth and School Facilities* 4 (2017), https://www.glsen.org/sites/default/files/2019-11/Separation_and_Stigma_2017.pdf; Gabriel Murchison *et al.*, *School restroom and locker room restrictions and sexual assault risk among transgender youth*, 143 Pediatrics (2019); Kristie L. Seelman, *Transgender Adults' Access to College Bathrooms and Housing and the Relationship to Suicidality*, 63 J. of Homosexuality 1378 (2016).

[10] *See* Michelle M. Johns, I, Trends in violence victimization and suicide risk by sexual identity among high school students, 69 Morbidity and Mortality Weekly Report 19 (2020), https://doi.org/10.15585%2Fmmwr.su6901a3.

[11] National Academies of Sciences, Engineering, and Medicine, *Understanding the Well-Being of LGBTQI+ Populations*, 264, 265 (2020), Washington, DC: The National Academies Press. One large national survey found 46% of LGBT workers reported facing unfair treatment due to their LGBT status, with 34% leaving a job due to such mistreatment. Brad Sears *et al.*, Williams Inst. *LGBT People's Experiences of Workplace Discrimination and Harassment* (2021). And in a survey of 27,000 transgender adults, 15% of those employed faced workplace harassment while 23% reported other discrimination (besides firing). James Herman *et al.*, *Report of the 2015 US Transgender Survey*, National Center for Transgender Equality (2016), https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf.

Indeed, this Court has already recognized the serious harms that discrimination inflicts on LGBTQ people when they are excluded from facilities and activities consistent with their gender identity. *See Dodds*, 845 F.3d at 221-22 (concluding that staying an injunction protecting transgender student's ability to use the restrooms would have "substantial and immediate adverse effects" on the 11-year-old child with a history of suicide attempts that were "not distant or speculative"); *accord Grimm*, 972 F.3d at 617 (barring transgender student from using boys' restroom caused harm; student developed infections from avoiding restroom use and was hospitalized for suicidal thoughts); *Whitaker*, 858 F.3d at 1040-42, 1045 (transgender student was irreparably harmed when barred from boys' restroom: the student restricted water intake to avoid using the restroom, aggravating a medical condition resulting in dizziness and fainting, causing school absences and "significant psychological distress," including migraines, anxiety, depression, and suicidality).

For substantially the same reasons, the district court was required to consider not only the public interest in complying with the Administrative Procedure Act, but also the public interest in protecting LGBTQ people from discrimination. If "broad, abstract rule of law concerns" were always "sufficient to defeat more concrete harms to innocent third parties, the public interest factor would weigh in favor of an injunction in nearly every case," which would "render this factor meaningless." *SAS*

18

*Inst., Inc.*, 874 F.3d at 388. The district court was, therefore, obligated to consider whether its injunction was contrary to the compelling public interest in protecting students and workers from sex-based discrimination. *See Dodds*, 845 F.3d at 222 (recognizing that protecting a transgender student's civil rights with respect to using the restroom is in the public interest); *Harris Funeral Homes*, 884 F.3d at 594 (recognizing compelling governmental interest in protecting transgender woman from discrimination regarding how people with a male sex assigned at birth "should dress, appear, behave, and identify").

For all these reasons, even if the district court had properly analyzed Plaintiffs' likelihood of success and had properly exercised jurisdiction over all the Plaintiffs' claims, the district court's failure to consider the harm to LGBTQ students and workers would still constitute an abuse of discretion and independently require reversal.

## CONCLUSION

The district court's preliminary injunction should be reversed, and the case should be remanded to the district with instructions to dismiss the case in its entirety or, in the alternative, to sever and transfer the claims of Plaintiff States in the Fourth, Seventh, and Ninth Circuits.

Respectfully submitted,

/s/ Joshua A. Block
Joshua A. Block
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, New York 10004
Phone: (212) 549-2593

*Counsel for Amici Curiae*

Dated: December 22, 2022

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[x] this brief or other document contains 4,870 words

[ ] this brief uses monospaced type and contains [state number of] lines

2.      This brief complies with the typeface and type style requirements because:

[x] this brief or other document has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in in 14-point Times New Roman.

 [ ] this brief or other document has been prepared in a monospaced typeface using [identify word processing program]


Dated:  December 22, 2022                    /s/ Joshua A. Block
                                             Counsel for Plaintiff-Appellee

## CERTIFICATE OF SERVICE

I hereby certify that on this 22d day of December, 2022, I filed the foregoing Brief with the Clerk of the Court using the CM/ECF system, which will automatically serve electronic copies upon all counsel of record.

/s/ Joshua A. Block
Counsel for Plaintiff-Appellee

22