No. 22-5807

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

———————————

STATE OF TENNESSEE, et al.,

Plaintiffs-Appellees,

v.

DEPARTMENT OF EDUCATION, et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the Eastern District of Tennessee, No. 3:21-cv-00308 (Atchley, J.)

———————————

**REPLY BRIEF FOR APPELLANTS**

———————————

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

CHARLES SCARBOROUGH
DAVID L. PETERS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7209*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue, NW*
  *Washington, DC 20530*
  *(202) 514-1673*

# TABLE OF CONTENTS

**<u>Page</u>**

INTRODUCTION ....................................................................................... 1

ARGUMENT ............................................................................................... 2

I.     The States Lack Standing.................................................................. 2

II.    The States' Claims Are Not Reviewable. ....................................... 12

III.   The States Are Not Entitled To A Preliminary Injunction. .......... 19

IV.    The Preliminary Injunction Is Overbroad. .................................... 27

CONCLUSION ......................................................................................... 33

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                            **Page(s)**

*Abbott Lab's. v. Gardner*,
    387 U.S. 136 (1967) ............................................................. 17

*Adams ex rel. Kasper v. School Bd. of St. Johns Cty.*,
    57 F.4th 791 (11th Cir. 2022) ................................................... 13, 13-14

*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*,
    576 U.S. 787 (2015) ................................................................. 5

*Arizona v. Biden*,
    40 F.4th 375 (6th Cir. 2022) ................................................. 3, 5, 12, 13

*B.P.J. v. West Virginia State Bd. of Educ.*,
    --- F. Supp. 3d ----, 2023 WL 111875 (S.D. W. Va. Jan. 5, 2023),
    *appeal filed*, No. 23-1078 (4th Cir. Jan. 24, 2023) ............................ 13

*Board of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.*,
    208 F. Supp. 3d 850 (S.D. Ohio 2016) ................................................ 18

*Bostock v. Clayton County*,
    140 S. Ct. 1731 (2020) ........................................................... 23

*Carson v. Here's Johnny Portable Toilets, Inc.*,
    810 F.2d 104 (6th Cir. 1987) ............................................................. 30

*City & Cty. of San Francisco v. Garland*,
    42 F.4th 1078 (9th Cir. 2022) ........................................................... 4

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ......................................................... 8, 9

*Cohen v. Brown Univ.*,
    991 F.2d 888 (1st Cir. 1993) ............................................................ 27

*Dodds v. U.S. Dep't of Educ.*,
    845 F.3d 217 (6th Cir. 2016) ................................................. 23, 27, 32

*Elgin v. Department of the Treasury*,
    567 U.S. 1 (2012) ................................................................. 19

*Flight Training Int'l, Inc. v. Federal Aviation Admin.*,
   --- F.4th ----, 2023 WL 368471 (5th Cir. Jan. 24, 2023) .............. 20, 22

*Garcia v. Vilsack*,
   563 F.3d 519 (D.C. Cir. 2009) ............................................... 16

*Grimm v. Gloucester Cty. Sch. Bd.*,
   972 F.3d 586 (4th Cir.), as amended (Aug. 28, 2020),
   *reh'g en banc denied*, 976 F.3d 399 (4th Cir. 2020),
   *cert. denied*, 141 S. Ct. 2878 (2021) .............................. 23, 31

*Hoctor v. U.S. Dep't of Agric.*,
   82 F.3d 165 (7th Cir. 1996) ................................................ 26

*Kentucky v. Yellen*,
   54 F.4th 325 (6th Cir. 2022) ...................... 27-28, 28, 29, 30

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ....................................................... 4, 7

*Maine v. Taylor*,
   477 U.S. 131 (1986) ............................................................ 5

*Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*,
   71 F.3d 574 (6th Cir. 1995) ................................................ 26

*Mann Constr., Inc. v. United States*,
   27 F.4th 1138 (6th Cir. 2022) ............................................ 21

*Massachusetts v. Mellon*,
   262 U.S. 447 (1923) ............................................................ 5

*McKay v. Federspiel*,
   823 F.3d 862 (6th Cir. 2016) ........................................... 9, 10

*Memphis A. Philip Randolph Inst. v. Hargett*,
   978 F.3d 378 (6th Cir. 2020) ......................................... 25, 26

*Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.*,
   766 F.2d 228 (6th Cir. 1985) ............................................... 5

*Online Merchs. Guild v. Cameron*,
   995 F.3d 540 (6th Cir. 2021) .............................................. 25

*Parke, Davis & Co. v. Califano*,
   564 F.2d 1200 (6th Cir. 1977) .............................................................. 16

*Parsons v. U.S. Dep't of Justice*,
   878 F.3d 162 (6th Cir. 2017) .................................................. 12, 14, 15

*PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*,
   139 S. Ct. 2051 (2019) ......................................................................... 16

*Perez v. Mortgage Bankers Ass'n*,
   575 U.S. 92 (2015) .................................................................... 20, 21, 24

*POET Biorefining, LLC v. EPA*,
   970 F.3d 392 (D.C. Cir. 2020) ............................................................ 22

*Polyweave Packaging, Inc. v. Buttigieg*,
   51 F.4th 675 (6th Cir. 2022) ............................................................... 19

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
   547 U.S. 47 (2006) .......................................................................... 28, 29

*Sackett v. EPA*,
   566 U.S. 120 (2012) .............................................................................. 17

*School of the Ozarks, Inc. v. Biden*,
   41 F.4th 992 (8th Cir. 2022) .................................................. 11, 13, 14

*Shalala v. Guernsey Mem'l Hosp.*,
   514 U.S. 87 (1995) ................................................................................ 21

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ............................................................................... 8

*Tennessee Hosp. Ass'n v. Azar*,
   908 F.3d 1029 (6th Cir. 2018) ............................................................. 20

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) ....................................................................... 18, 19

*United States v. AMC Entm't, Inc.*,
   549 F.3d 760 (9th Cir. 2008) ......................................................... 30, 31

*Weinberger v. Romero-Barcelo*,
   456 U.S. 305 (1982) .............................................................................. 29

iv

*Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
    858 F.3d 1034 (7th Cir. 2017) ........................................................ 23, 31

*Whole Woman's Health v. Jackson*,
    142 S. Ct. 522 (2021) .................................................................. 16

**Statutes:**

Administrative Procedure Act (APA):
    5 U.S.C. § 703 .......................................................................... 16
    5 U.S.C. § 704 .......................................................................... 15

20 U.S.C. § 1682 ...................................................................... 8, 10, 17

20 U.S.C. § 1683 ........................................................................ 17

Neb. Rev. Stat. § 79-2,124 ...................................................... 3

**Regulations:**

34 C.F.R. §§ 100.6-100.11 ...................................................... 17

34 C.F.R. § 100.7 ...................................................................... 8

34 C.F.R. § 100.8(a) .................................................................. 8

34 C.F.R. § 106.81 .................................................................... 8

## INTRODUCTION

This appeal is not—as the States, Intervenors, and their amici would have it—about whether the challenged informational documents issued by the Department of Education (Education) reflect a valid interpretation of Title IX. They do. But the district court did not pass on that issue, and settled precedent counsels against this Court doing so in the first instance. Instead, this appeal presents more prosaic but no less pressing questions, including: whether the States established standing to challenge the documents; whether the States' claims were reviewable; whether the States were likely to succeed on their claim that the documents were procedurally invalid; whether the States established the remaining preliminary injunction factors; and whether the district court properly exercised its discretion in issuing an injunction covering all plaintiff States.

The answer to all those questions is no. The States proffer various theories of standing, but none satisfies the foundational requirements of Article III. The States' claims are, moreover, unreviewable under the Administrative Procedure Act (APA) for at least three reasons: the challenged documents are not final agency action, the States have an

adequate alternative remedy, and Title IX forecloses pre-enforcement challenges like those asserted here.  Nor are the States likely to prevail on their procedural claim because the challenged documents—which have no independent legal effect but merely explain Education's interpretation of the statutory scheme it is entrusted to enforce—are not legislative rules subject to notice-and-comment requirements.  The States also failed to establish the remaining preliminary injunction factors, and the district court's injunction is overbroad in several respects.  Accordingly, this Court should vacate the preliminary injunction or, at a minimum, narrow its scope.[1]

## ARGUMENT

### I.    The States Lack Standing.

The district court erred in concluding that the States established standing to challenge Education's informational documents.  As this

---

[1] The government also appealed the portion of the district court's preliminary injunction order concerning the Technical Assistance Document issued by the Equal Employment Opportunity Commission. *See* PI Order, R. 86 # 1987.  All parties now agree that "there is no longer a live controversy regarding whether this document is valid," Opening Br. 8 n.2; States Br. 53 (same).  Although the government suggested that the order should be vacated to the extent it enjoins implementation of the Technical Assistance Document, the government now agrees that dismissing this portion of the appeal as moot would be proper in these circumstances.

Court recently explained, Article III's "foundational standing requirements" apply to "private and public litigants alike." *Arizona v. Biden*, 40 F.4th 375, 385 (6th Cir. 2022). Although "States sometimes are entitled to 'special solicitude' in this area" because they may "have more theories of injury available to them, that does not allow them to bypass proof of injury in particular or Article III in general." *Id.* at 385, 386. The States here offer various theories of standing, *see* States Br. 15-19, but none suffices to meet the requirements of Article III.

1. The States mistakenly argue that they established standing based on purported injuries to their sovereign interest in creating and enforcing a legal code. States Br. 16-19. The States concede that several of them have no state laws that conflict in any way with the statutory interpretation set forth in the informational documents. States Br. 50. In addition, many of the purported conflicts between the documents and the States' laws are illusory. For example, the States point to a Nebraska law that merely permits educational institutions to establish sex-separated bathroom facilities, States Br. 17 (citing Neb. Rev. Stat. § 79-2,124), without any explanation as to how that law conflicts with the interpretation of Title IX set out in the informational documents. The

States also cite a handful of laws that generally protect teachers' religious liberty and freedom of speech, *see* States Br. 18 (citing Tennessee, Oklahoma, and West Virginia laws), without identifying how these broadly framed statutes are undermined by the interpretation set out in the documents. Indeed, as the States appear to recognize, the most that can be said is that some of the States have some laws whose application in some circumstances might "arguably conflict" with the interpretation set out in the informational documents. States Br. 11 (quoting PI Order, R. 86, Page ID # 1953).

Any such abstract and speculative conflicts are insufficient to confer standing. Sovereign injuries, like all Article III injuries, must be "actual" and "concrete," "not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks omitted). The "mere existence" of the informational documents does not create "actual or concrete sovereign injuries." *City & Cty. of San Francisco v. Garland*, 42 F.4th 1078, 1086 (9th Cir. 2022) (quotation marks omitted). Nor does "the possibility of some future … application" of the interpretation set out in the documents. *Id.* Because the documents do not "actually invade[] or threaten[]" any sovereign interest,

the States' claims present only "abstract questions of political power, of sovereignty, of government," and they lack standing to pursue them. *Massachusetts v. Mellon*, 262 U.S. 447, 483, 485 (1923).[2]

This case thus stands on very different footing from those relied upon by the States. States Br. 19-20. This is not a case where a state law has been held invalid, *see Maine v. Taylor*, 477 U.S. 131 (1986), or where a federal regulation expressly preempts state law, *see Ohio ex rel. Celebrezze v. U.S. Dep't of Transp.*, 766 F.2d 228 (6th Cir. 1985). Indeed, although the States suggest in passing that the challenged documents "regulat[e] … them as States" and "preempt[] … local lawmaking authority," States Br. 20 (quoting *Arizona*, 40 F.4th at 386), the documents make clear that is not correct. The documents by their terms "regulate" nothing; instead, they merely express Education's understanding of the prohibition against sex discrimination in Title IX.

---

[2] The States wrongly suggest that *Mellon* has been limited to its facts. In the case the States cite (at 21), the Supreme Court merely explained that *Mellon* "bears little resemblance to … case[s]," like that one, involving the standing of state legislative bodies. *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787, 802 n.10 (2015). In fact, this Court recently reiterated *Mellon's* central premise, i.e., that in the standing analysis States cannot "bypass proof of injury in particular or Article III in general." *Arizona*, 40 F.4th at 385.

They are pertinent to the States only because the States, like other private and public entities, are subject to Title IX as recipients of federal funds. Neither the documents nor the views expressed therein preempt state law or prevent the States from enacting or enforcing their laws. The States' own briefing confirms this point. *See* States Br. 20 (discussing enactment of Tennessee law despite speculation about potential conflict with the interpretation of Title IX set out in the challenged documents).

The States nonetheless insist (at 23, 47) that the informational documents at least conflict with a West Virginia law that is the subject of a Title IX challenge by a transgender student in which the United States filed a statement of interest. *See* Statement of Interest of the United States, *B.P.J. v. West Virginia State Bd. of Educ.*, No. 2:21-cv-00316 (S.D. W. Va. June 17, 2021), ECF No. 42, https://perma.cc/6BDC-FZZ8. But that case—brought on behalf of an 11-year-old transgender girl challenging an application of a West Virginia law that bars her from participating on her middle school girls' cross-country and track teams, *id.* at 4—only underscores the States' lack of a concrete Article III injury here. The very real injury to an individual student underpinning the fact-specific challenge in *B.P.J.* stands in stark contrast to the States'

abstract claims of sovereign injury, which are entirely too "conjectural or hypothetical" to establish standing, *Lujan*, 504 U.S. at 560 (quotation marks omitted).

The West Virginia case also highlights another fundamental flaw in the States' standing theory—that is, any sovereign injury that the States may have suffered is neither caused by the documents nor redressable by an injunction prohibiting Education from implementing them. *See Lujan*, 504 U.S. at 560-61. The informational documents merely summarize Education's understanding of Title IX; they create no new rights or obligations. *See infra* pp. 12-15. To the extent any conflict may exist, it derives from Title IX itself, not from the challenged documents. The United States, for instance, filed its statement of interest in the West Virginia case before the challenged documents were even issued. *See* Statement of Interest. That fact alone puts to rest the States' erroneous claims that the informational documents are the cause of their purported sovereign injuries and that an injunction barring the documents' implementation would redress those supposed harms. States Br. 21-22.

2.  The States' alternative theory of standing—that they face the threatened loss of federal funding, *see* States Br. 15, 21-25—is equally unavailing because the States have not established that any such loss is "sufficiently imminent" to confer standing, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014).  As the government explained, Opening Br. 33-34, Title IX and its implementing regulations establish an extensive administrative process to evaluate alleged Title IX violations.  *See* 34 C.F.R. §§ 100.7, 106.81.  The multi-step process must be completed before the agency can initiate steps to revoke recipients' funds, *id.* § 100.8(a), and the statute expressly provides that "no action shall be taken" against recipients unless "compliance cannot be secured by voluntary means," 20 U.S.C. § 1682.  The States' theory of standing based on the threatened loss of federal funding thus "relies on a highly attenuated chain of possibilities" and "does not satisfy the requirement that threatened injury must be certainly impending."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).  The States offer no response to this point; indeed, their briefing ignores the administrative framework altogether.

The States also have not established that they face an actual and imminent risk of enforcement that would result in the loss of federal funding. They do not dispute that Education has taken no Title IX enforcement actions against them based on the interpretation expressed in the challenged documents. *See McKay v. Federspiel*, 823 F.3d 862, 870 (6th Cir. 2016) (finding no credible threat of enforcement where "the record is silent regarding any history of past enforcement of the order against [the plaintiff]"). The States instead point to a complaint filed by a private party against a Texas school district and the West Virginia litigation. *See* States Br. 22-23; States Rule 28(j) Letter, *Tennessee v. Department of Education*, No. 22-5807 (Feb. 6, 2023). But these isolated examples hardly establish "a history of past enforcement" sufficient to show that the States face a credible threat of lost funding. *McKay*, 823 F.3d at 869. Opening an investigation into a Title IX complaint is only the first step in the administrative framework; it does not mean that the subject of the complaint, much less third parties, face the "certainly impending" threat of lost funds. *Clapper*, 568 U.S. at 410. And as

9

explained, *supra* p. 6, the West Virginia challenge was brought by a private entity, not Education.[3]

It is also irrelevant that Education has not broadly disavowed enforcing the interpretation of Title IX that the States purport to fear. *Contra* States Br. 21-23. Congress charged Education with enforcing Title IX, and the agency must carry out its statutorily required responsibility. *See* 20 U.S.C. § 1682. That fact alone does not establish a credible threat of enforcement sufficient to establish standing, or else pre-enforcement suits would be the rule, not the exception. *Cf. McKay*, 823 F.3d at 869 (explaining that "a defendant's refusal to disavow enforcement" is merely a "consideration" in the standing analysis).

In any event, what Education has "vowed to 'fully enforce'" is Title IX, not the informational documents. *Contra* States Br. 23 (quoting Notice of Interpretation, Compl. Ex. A, R. 1-2, Page ID # 42). That is because the documents are not substantive regulations and do not have the force or effect of law. Even if a court sets aside or enjoins the

---

[3] The States rightly acknowledge that the possibility of damages actions brought by private parties does not equate to a credible threat that Education will separately take steps to deprive them of federal funding. *See* States Br. 24-25.

implementation of these documents, Education could still fully enforce Title IX against the States.[4]  The States' theory of standing thus suffers the additional Article III defect that any injury related to the loss of federal funds would not be traceable to these documents or redressed by judicial relief directed at them.  *See School of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 1001 (8th Cir. 2022) (explaining that the challenger "failed to show that enjoining officials from implementing" an analogous document from the Department of Housing and Urban Development (HUD) "would redress any injury allegedly arising" from the document "because the agency retains the authority and responsibility to carry out the same enforcement activity based on the statute alone").[5]

3.  The States also cannot establish standing based on their passing suggestion that they have incurred compliance costs related to the

---

[4] As explained, Opening Br. 14, the United States filed a Notice of Compliance after the district court issued its injunction explaining that it did not understand the injunction to prevent the agencies from enforcing Title IX against the States.  The district court took no action indicating the government's understanding of the injunction was mistaken.

[5] The States' attempt (at 37 n.7) to distinguish *School of the Ozarks* ignores that the Eighth Circuit held that the religious college challenging HUD's document in that case lacked standing for the independent reason that it failed to show redressability and traceability.  41 F.4th at 995.

informational documents.  States Br. 15-6, 24, 47.  The States have not identified what compliance measures they have taken or what costs they have incurred.  Nor have the States explained how those purported measures and costs differ from their existing obligations to comply with Title IX more broadly.  These deficiencies alone preclude any claim of injury based on vague, unspecified "compliance costs."  In any event, this theory of standing suffers from the same traceability and redressability flaws as the States' other theories.

## II.    The States' Claims Are Not Reviewable.

Standing aside, the States' APA claims are unreviewable for at least three independent reasons.

1.  The informational documents are not final agency action subject to review because they do "not impose liability, determine legal rights or obligations, or mandate, bind, or limit other government actors." *Parsons v. U.S. Dep't of Justice*, 878 F.3d 162, 169 (6th Cir. 2017).  The States do not dispute that the documents themselves—a Notice of Interpretation, "Dear Educator" Letter, and Fact Sheet—"do not evoke binding legal effect."  *Arizona*, 40 F.4th at 387.  Nor do the States dispute that, "[c]onsistent with [those] label[s]," *id.*, the documents expressly disavow

12

having any independent legal effect. These are "telltale signs all of …
nonbinding" documents, "not of reviewable agency action." *Id.* at 388.

There is also nothing in the "record to indicate that" the challenged
documents have "binding legal effects." *Arizona*, 40 F.4th at 389. The
documents merely set out Education's interpretation of the statutory
scheme it is charged with enforcing. They "do[] not create any legal
rights," and no party "could invoke [them] to establish legal protection."
*Id.*; *see also School of the Ozarks*, 41 F.4th at 998 (explaining that an
analogous HUD document "does not impose any restrictions on, or create
any penalties against, entities subject to the Fair Housing Act").

The States' own preferred authority—recent decisions from the
West Virginia litigation and the en banc Eleventh Circuit—makes this
clear. *See, e.g.*, States Br. 28 (citing *B.P.J. v. West Virginia State Bd. of
Educ.*, --- F. Supp. 3d ----, 2023 WL 111875 (S.D. W. Va. Jan. 5, 2023),
*appeal filed*, No. 23-1078 (4th Cir. Jan. 24, 2023); *Adams ex rel. Kasper
v. School Bd. of St. Johns Cty.*, 57 F.4th 791 (11th Cir. 2022) (en banc)).
Both of those decisions related to the obligations imposed by Title IX on
specific regulated entities concerning anti-discrimination protections for
transgender students. *See B.P.J.*, 2023 WL 111875, at *9; *Adams*, 57

13

F.4th at 811. That is, both cases concerned an application of the interpretive issues addressed in the informational documents. Neither decision, however, even mentions the documents, much less suggests that they played any role in determining the parties' legal rights and obligations.

The States' contention (at 28-29) that the informational documents bind the agency is also wrong. The documents do not require Education (or anyone else) to reach a particular conclusion on any facts. As the Notice of Interpretation explains, while the documents will "guide the Department in processing complaints and conducting investigations," they do "not [themselves] determine the outcome in any particular case or set of facts." Notice of Interpretation; *see also* Fact Sheet, Compl. Ex. C, R. 1-4, Page ID # 73 (listing scenarios that Education "can investigate" without purporting to determine an outcome of any such investigation). And although the documents set out Education's understanding of Title IX's scope, they do "not limit (or compel) action" by the agency or any "other government actors." *Parsons*, 878 F.3d at 171; *see also School of the Ozarks*, 41 F.4th at 998 (reaching similar conclusion for an analogous HUD document).

14

It is thus irrelevant that recipients of federal funding who disagree with, or elect to disregard, the agency's interpretation might potentially face downstream consequences for that decision. *Contra* States Br. 27. Any such "[p]ractical consequences," this Court has explained, "are not legal harms that can transform" agency action into "final agency order[s]." *Parsons*, 878 F.3d at 169 (quotation marks omitted). Any such harms, moreover, would "result[] from a third-party's independent decision to rely upon" the interpretation set out in the informational documents (in the case of a private action) or depend "on the contingency of future administrative action" (in the case of agency enforcement), which confirms that the documents "do[] not of [themselves] adversely affect" funding recipients like the States. *Id.* at 168 (quotation marks omitted).

2.   The States' APA claims are unreviewable for the additional reason that the States have an adequate alternative remedy within the meaning of 5 U.S.C. § 704. The States do not dispute that they may raise all the legal challenges to the informational documents asserted here as affirmative defenses in any future enforcement action. Nor do they dispute that future enforcement actions would afford them an

opportunity for de novo review of agency action. *See Garcia v. Vilsack*, 563 F.3d 519, 522-23 (D.C. Cir. 2009). The availability of this "adequate remedy" renders the States' claims unreviewable. *Parke, Davis & Co. v. Califano*, 564 F.2d 1200, 1206 (6th Cir. 1977) (dismissing APA claims because the plaintiff had an "adequate remedy" in the ability "to contest" the challenged agency action by "interpos[ing] defenses" in enforcement actions).

This straightforward application of the APA would not, as the States claim, improperly limit judicial review of agency action, States Br. 30. The default rule under the APA is that challenges to agency action are raised as defenses in an enforcement action. *See* 5 U.S.C. § 703 (providing that "agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement"); *PDR Network, LLC v. Carlton & Harris Chiropractic, Inc.*, 139 S. Ct. 2051, 2059 (2019) (Kavanaugh, J., concurring in the judgment) (similar). Indeed, many rights "are as a practical matter asserted typically as defenses." *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 538 (2021).

There is no "unqualified right to pre-enforcement review." *Whole Woman's Health*, 142 S. Ct. at 538. A pre-enforcement action challenging

agency action is appropriate only where the impact of the agency action "is sufficiently direct and immediate as to render the issue appropriate for judicial review." *Abbott Lab's. v. Gardner*, 387 U.S. 136, 152 (1967). As explained, *supra* pp. 12-15, the informational documents have no direct and immediate effects on the States (or anyone else) because they impose no legal obligations and determine no legal rights. The States are thus wrong to compare this case to *Sackett v. EPA*, *see* States Br. 30 (citing 566 U.S. 120, 127 (2012)), which concerned a compliance order issued directly to petitioners that is entirely unlike the informational documents at issue here. As is "ordinarily" the case, *Sackett*, 566 U.S. at 127, judicial review of the States' challenges must await an enforcement action initiated by the agency.

3. The district court also lacked authority to review the States' claims because the scheme of administrative and judicial review that Congress established for Title IX enforcement-related disputes is exclusive. As the government explained, Opening Br. 5-6, Congress channels such disputes through the agency followed by judicial review in the court of appeals. *See* 20 U.S.C. §§ 1682, 1683; 34 C.F.R. §§ 100.6-100.11. The scheme affords regulated entities "meaningful review," in

part because any claims can ultimately be "addressed in the Court of Appeals." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207, 215 (1994). It is also "fairly discernible" that Congress intended that scheme to be exclusive, *id.* at 207 (quotation marks omitted), as other district courts in this circuit have held, *see Board of Educ. of the Highland Local Sch. Dist. v. U.S. Dep't of Educ.,* 208 F. Supp. 3d 850, 862-63 (S.D. Ohio 2016) (concluding that *Thunder Basin* precluded similar challenge by recipient to Education's interpretation of Title IX).

The States cannot circumvent that exclusive review scheme by filing a preemptive district-court action framed as a challenge to what they call the "agency's rules." States Br. 33. The States' core contentions are that Education's interpretation of Title IX is incorrect and that they should not be subject to enforcement for non-compliance. Those claims are precisely "of the type Congress intended to be reviewed within [the] statutory structure." *Thunder Basin*, 510 U.S. at 212. As this Court has explained in an analogous context, "[t]o conclude otherwise would prove too much" because "[a] party could always circumvent an exclusive-jurisdiction provision applicable to agency action by challenging the promulgation … of the rules" underlying the enforcement proceeding.

18

*Polyweave Packaging, Inc. v. Buttigieg*, 51 F.4th 675, 684 (6th Cir. 2022) (holding *Thunder Basin* precluded review of APA claims brought "in an effort to undo the underlying enforcement proceeding").

The States' claims also are not "wholly collateral" to the statutory scheme, and they do not fall "outside the agency's expertise." *Thunder Basin*, 510 U.S. at 212 (quotation marks omitted). *Contra* States Br. 34. The States' claims are "the vehicle by which" they object to Education's interpretation of Title IX's meaning. *Elgin v. Department of the Treasury*, 567 U.S. 1, 22 (2012). Adjudication of those objections falls squarely within Title IX's review structure. And the States' claims—including their constitutional ones—are within Education's expertise, including because resolution of "preliminary questions unique" to the Title IX context could "obviate the need to address the constitutional challenge." *Id.* at 22-23; *see also Polyweave Packaging*, 51 F.4th at 685 (similar).

## III. The States Are Not Entitled To A Preliminary Injunction.

For the above reasons, the district court should not have reached the preliminary injunction analysis. In any event, the court abused its discretion in issuing the injunction because the States are unlikely to

19

prevail on their notice-and-comment claim and because they failed to establish the remaining factors for preliminary relief.

1. The district court clearly erred in concluding that the States were likely to prevail on their claim that Education was required to issue the informational documents through notice-and-comment rulemaking.

The States recognize that only "legislative rules" must be issued through the notice-and-comment process; other agency documents, like interpretive rules, need not be. *See Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 96 (2015). The hallmark of legislative rules is that they "have the 'force and effect of law.'" *Tennessee Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018) (quoting *Perez*, 575 U.S. at 97). They "intend[] to create new law, rights or duties," *id.* (quotation marks omitted), and "bind courts[] … because they actually *are* law," *Flight Training Int'l, Inc. v. Federal Aviation Admin.*, --- F.4th ----, 2023 WL 368471, at *4 n.5 (5th Cir. Jan. 24, 2023). Interpretive rules, by contrast, "simply state[] what the administrative agency thinks the statute means." *Tennessee Hosp. Ass'n*, 908 F.3d at 1042 (quotation marks omitted). They "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." *Perez*, 575 U.S. at 97 (quotation marks omitted).

At most,[6] the challenged documents amount to interpretive rules. They do not "impose new rights or duties" and do not "change the legal status of regulated parties." *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1143 (6th Cir. 2022). They bind no court and would not be accorded the weight of law in an adjudicatory process. Instead, the documents "merely clarify the requirements that Congress has already put in place." *Id.* They explain Education's understanding of Title IX's existing prohibition on sex discrimination, "advis[ing] the public of the agency's construction of the statutes and rules which it administers," *Perez*, 575 U.S. at 97 (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995)). That is the "critical feature of interpretive rules," *id.*, and the fact that the informational documents do nothing more than articulate what the agency thinks Title IX means confirms that they are not legislative rules.

Once more, the States' own preferred authority proves the point. The recent West Virginia and en banc Eleventh Circuit decisions involved an application of the interpretive issues addressed in the informational

---

[6] As explained, Opening Br. 49 n.6, the Fact Sheet does not even amount to a "rule" for purposes of the APA and was not required to go through notice-and-comment rulemaking for that reason as well.

21

documents.  *See supra* pp. 13-14.  Under the States' theory, those courts should have treated the documents as having the force and effect of law and accorded them weight in the adjudicatory process.  Neither court, however, suggested that it was bound by the interpretation set forth in the informational documents or that the documents determined the parties' rights and obligations.  Indeed, neither court even mentioned the documents.  That is because they are not "actually … law," *Flight Training Int'l*, 2023 WL 368471, at *4 n.5, and thus not subject to the requirements of notice-and-comment rulemaking.

The States erroneously assert that the challenged documents are necessarily legislative rules because they "'chang[ed] the text' of the statute and regulations."  States Br. 37 (alteration in original) (quoting *POET Biorefining, LLC v. EPA*, 970 F.3d 392, 407 (D.C. Cir. 2020)).  The documents do no such thing.  Education of course could not change what Title IX says.  And nothing in the documents purports to substantively alter or amend the agency's existing regulations.  The documents "could hardly be clearer," *POET Biorefining*, 970 F.3d at 407, that all they do is set out Education's "interpretation of discrimination 'on the basis of sex' under Title IX," Notice of Interpretation.

22

The States also insist that the informational documents must be legislative rules because, in their view, neither Title IX nor the Supreme Court's decision in *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), supports Education's interpretation of the statute.  *See* States Br. 35, 37. The States' understandings of Title IX and *Bostock* are wrong, as decisions from this Court and others make plain.  *See Dodds v. U.S. Dep't of Educ.*, 845 F.3d 217, 221-22 (6th Cir. 2016) (per curiam) (holding pre-*Bostock* that a school district that sought to exclude a transgender girl from the girls' restroom was not likely to succeed on its appeal because Title IX prohibits discrimination based on sex stereotyping and gender nonconformity); *see also Grimm v. Gloucester Cty. Sch. Bd.*, 972 F.3d 586, 616 (4th Cir.), as amended (Aug. 28, 2020) (explaining that "[a]lthough *Bostock* interprets Title VII[,] … it guides our evaluation of claims under Title IX" and holding that a bathroom policy that prohibited a transgender boy from accessing the boy's restroom violated Title IX), *reh'g en banc denied*, 976 F.3d 399 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2878 (2021); *Whitaker By Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1048-49 (7th Cir. 2017) (holding that a transgender student was likely to succeed on his Title IX sex

23

discrimination claim challenging a school district policy preventing his use of the boy's restroom).

In any event, the States' argument confuses the relevant inquiry. The question before this Court is not whether Education's interpretation of Title IX is correct; rather, the question is whether the informational documents informing the public of that interpretation are legislative rules subject to notice-and-comment requirements. Because the documents merely "advise the public of the agency's construction of the statutes and rules which it administers," they lack the "force and effect of law." *Perez*, 575 U.S. at 97 (quotation marks omitted). That the States disagree with Education's interpretation does not transform the non-binding documents into legislative rules.

The district court thus erred in concluding that the States were likely to prevail on their notice-and-comment claim. The district court expressly declined to address the merits of the States' other challenges to the informational documents. *See* PI Order, R. 86, Page ID # 1979 ("The Court begins, and ends, with assessing Plaintiffs' notice and comment claim."). This Court should likewise refrain in this interlocutory appeal from passing on the merits of those claims in the first instance. *Contra*

States Br. 38-46.  As this Court has explained, it is "a court of review, not of first view." *Online Merchs. Guild v. Cameron*, 995 F.3d 540, 560 (6th Cir. 2021) (quotation marks omitted).  The States' "alternative arguments," moreover, "are underdeveloped here" and should be left "for the district court's consideration in the first instance." *Id.* (rejecting the plaintiff's argument that the Court "should uphold [a] preliminary injunction based on alternative grounds not addressed by the district court").

2.  The district court erred in issuing the preliminary injunction for the independent reasons that the States failed to establish irreparable harm and that the balance of equities weighed in favor of injunctive relief.  *See Memphis A. Philip Randolph Inst. v. Hargett*, 978 F.3d 378, 391 (6th Cir. 2020) ("Irreparable harm is an indispensable requirement for a preliminary injunction[] …." (quotation marks omitted)).

For many of the reasons that the States failed to demonstrate imminent, concrete injuries sufficient to confer standing, the States suffered no irreparable harm as a result of the informational documents. The States' purported sovereign injuries based on (at most) arguable conflicts with the documents are entirely too "speculative [and]

theoretical" to merit a preliminary injunction. *Memphis A. Philip Randolph Inst.*, 978 F.3d at 391 (quotation marks omitted). Similarly, any threat that the States will lose federal funding for not complying with the interpretation set out in the documents is insufficiently "certain and immediate" to warrant preliminary injunctive relief. *Id.* (quotation marks omitted). Nor can the States' claimed compliance costs establish irreparable harm, as the States wholly failed to "substantiate[] their allegation[s] of irreparable … harm with any evidence" in the record. *Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 581 (6th Cir. 1995). Finally, the States cannot satisfy their burden by invoking unspecified and unsubstantiated concerns about third parties' "privacy, safety, and First Amendment freedoms." States Br. 48.

The balance of harms and public interest also weigh against injunctive relief. The district court's injunction improperly limits the agency's ability to explain its understanding of Title IX's meaning. Regulated entities and the public alike benefit when agencies explain their understanding of the statutes they are charged with enforcing. *See Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165, 167 (7th Cir. 1996). That is especially true in this context, given that the "overriding public interest

l[ies] in the firm enforcement of Title IX." *Dodds*, 845 F.3d at 222 (alteration in original) (quoting *Cohen v. Brown Univ.*, 991 F.2d 888, 906 (1st Cir. 1993)).[7]

## IV.  The Preliminary Injunction Is Overbroad.

The district court abused its discretion for the independent reason that the preliminary injunction—which extends to all plaintiff States—is overbroad in several respects.  Even if this Court were to uphold the preliminary injunction on the merits, it should therefore narrow the injunction's scope.

At a minimum, the district court erred in extending the injunction's scope to cover the plaintiff States that failed to establish standing.  As this Court recently explained, district courts have "no authority to issue an injunction protecting a party that failed to demonstrate that its challenge was even justiciable"; rather, to "obtain injunctive relief, … each" plaintiff must "demonstrate, with evidence, why it was suffering *particularized* continuing or imminent injuries in fact."  *Kentucky v.*

---

[7] The challenged documents do not somehow "miseducate[] the public" simply because a decision cited by Education in the documents has since been vacated.  States Br. 47 (emphasis omitted).  The documents still reflect Education's understanding of Title IX's requirements.

*Yellen*, 54 F.4th 325, 341 n.12 (6th Cir. 2022). Here, the district court concluded that ten of the States failed to adequately demonstrate an injury in fact sufficient to support standing.[8] PI Order, R. 86, Page ID # 1957. The district court thus had no authority to issue an injunction covering those States.[9]

Relying on the Supreme Court's decision in *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, the States assert that so long as one of them established standing they were all entitled to injunctive relief. States Br. 15 (citing 547 U.S. 47, 52 n.2 (2006)). But this Court recently rejected an identical argument in *Kentucky v. Yellen*. *See* 54 F.4th at 341 n.12. *Rumsfeld* was "inapposite," the Court explained, because "[t]here, determining the standing of each individual plaintiff (and thus the legitimate scope of injunctive relief) was irrelevant," given that the Supreme Court "needed to find standing only as to a single

---

[8] Those ten States are: Georgia, Indiana, Kansas, Kentucky, Louisiana, Mississippi, Missouri, Ohio, South Carolina, and South Dakota. *See* Motion to Dismiss, R. 49, Page ID # 358.

[9] Education did not waive this argument. *Contra* States Br. 49. The agency pointed out that these States lacked standing below, *see* Motion to Dismiss, R. 49, Page ID # 358, which requires narrowing the injunction, *see Kentucky*, 54 F.4th at 341 n.12.

plaintiff to deem their shared legal theory erroneous." *Id.* (citing 547 U.S. at 70). The case did not "permit a court that *knows* that a party is without standing to nonetheless allow that party to participate in the case." *Id.* (quotation marks omitted). The Court explained that the "proper course is, instead, to limit relief only to those parties who established the district court's jurisdiction to award it." *Id.* The district court improperly deviated from that course here.[10]

For much the same reason, the district court erred in enjoining the informational documents to the extent the documents discuss discrimination based on sexual orientation. The States do not dispute that they failed to identify any laws even arguably in conflict with these provisions of the documents. The States thus are suffering no

---

[10] The States suggest that the injunction's scope was proper because, in their view, universal vacatur is always appropriate under the APA. States Br. 50. That suggestion is flawed in several respects. The district court preliminarily enjoined, not vacated, the informational documents, PI Order, R. 86, Page ID # 1987, and injunctive relief must be limited "to those parties who established the district court's jurisdiction to award it," *Kentucky*, 54 F.4th at 341 n.12. In any event, the APA is not properly construed to displace the general rule that equitable remedies may go no further than necessary to redress a plaintiff's own injuries. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982) ("[W]e do not lightly assume that Congress has intended to depart from established [equitable] principles.").

"*particularized* continuing or imminent injuries in fact" related to these portions of the document. *Kentucky*, 54 F.4th at 341 n.12. And the district court thus abused its discretion in enjoining the informational documents in full because the "remedy must ... be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Id.* (alteration in original) (quotation marks omitted).

Lastly, the district court abused its discretion in issuing an injunction that covers plaintiff States located in circuits where binding precedent would make the informational documents "legal but for the injunction," *Carson v. Here's Johnny Portable Toilets, Inc.*, 810 F.2d 104, 105 (6th Cir. 1987) (per curiam). Principles of comity counsel against district courts enjoining out-of-circuit conduct where the "injunction is not a reasonable extension of [out-of-circuit] precedent." *United States v. AMC Entm't, Inc.*, 549 F.3d 760, 773 (9th Cir. 2008). Otherwise, the injunction "essentially requires" the out-of-circuit conduct "to be consistent with the [district court's] understanding" of the law, "rather than [another circuit's] reading of the" same law. *Id.* at 771; *see also Carson*, 810 F.2d at 105 (similar).

30

That is the case here. The district court's injunction was not "a reasonable extension" of decisions from the Fourth and Seventh Circuits endorsing the interpretation of Title IX reflected in the challenged documents. *See Grimm*, 972 F.3d at 616; *Whitaker*, 858 F.3d at 1048-49. Extending the injunction's scope to the plaintiff States in those circuits, i.e., Indiana, South Carolina, and West Virginia, "essentially requires" Education "to be consistent with the [district court's] understanding" of Title IX, "rather than [those circuits'] reading of the same provision." *AMC Entm't, Inc.*, 549 F.3d at 771.

It is irrelevant that those courts have not addressed the specific question of the informational documents' procedural validity. *Contra* States Br. 52. The relevant inquiry is whether the injunction is "a reasonable extension" of out-of-circuit precedent. *AMC Entm't, Inc.*, 549 F.3d at 773. In any event, the injunction's scope cannot be squared with the flawed theory embraced by the States and the district court—i.e., that the informational documents would be procedurally valid were Education's interpretation of Title IX supported by binding precedent— because the documents would then be procedurally valid in the geographic area covered by the Fourth and Seventh Circuits. *See*

31

Opening Br. 55-57. Thus, under the district court's own reasoning, it erred in extending the injunction's scope to Indiana, South Carolina, and West Virginia.[11]

---

[11] It was also error for the district court to enjoin the documents in this circuit based not on comity principles, but on the fact that the decision was not a reasonable extension of the Court's own case law. *See Dodds*, 845 F.3d at 221-22; *cf.* Opening Br. 52-55, 61-62.

## CONCLUSION

For the foregoing reasons, the district court's preliminary injunction should be vacated, or, at a minimum, the scope of the injunction should be narrowed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant
Attorney General*

CHARLES SCARBOROUGH

*s/ David L. Peters*
DAVID L. PETERS
*Attorneys, Appellate Staff
Civil Division, Room 7209
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 514-1673*

FEBRUARY 2023

33

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,450 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*s/ David L. Peters*
David L. Peters

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.


*s/ David L. Peters*
David L. Peters