STATE OF TENNESSEE

# Office of the Attorney General



**JONATHAN SKRMETTI**
ATTORNEY GENERAL AND REPORTER

P.O. BOX 20207, NASHVILLE, TN 37202
TELEPHONE (615)741-3491
FACSIMILE (615)741-2009

April 19, 2023

Deborah S. Hunt, Clerk
United States Court of Appeals for the Sixth Circuit
540 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202-3988

**Re:** *State of Tennessee, et al. v. Department of Education, et al.*, **No. 22-5807**

Dear Ms. Hunt:

Plaintiffs-Appellees (other than Arizona) and Intervenor-Appellees respectfully file this supplemental letter brief in response to the Court's request on April 10, 2023. As the Court is aware, the U.S. Department of Education ("Department") published a notice of proposed rulemaking in 2022 about Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 87 Fed. Reg. 41390 (July 12, 2022) ("2022 Notice"). Earlier this month, the Department published another notice of proposed rulemaking about Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance: Sex-Related Eligibility Criteria

1

for Male and Female Athletic Teams, 88 Fed. Reg. 22860 (April 13, 2023) ("2023 Notice"). Neither Notice precludes this Court's review of Defendants' appeal of the district court's order preliminarily enjoining implementation of the Interpretation and Fact Sheet against Plaintiff States. PI Order, R. 86, PageID#1987.[1]

Quite the opposite, the proposed rulemakings confirm what the States and Intervenors have argued: The Department has *already* attempted to rewrite Title IX through its Interpretation and Fact Sheet to prohibit discrimination of the basis of sexual orientation and gender identity. *See* States' June 27, 2022 Notice of Supplemental Authority, R. 83, PageID#1226. The Department's decision to plow ahead with rulemaking reliant on the challenged documents is yet more reason for this Court to affirm the district court's judgment, both on the notice-and-comment ground and on the additional grounds explained by the States and Intervenors.

I. **The Notices are No Obstacle to Review of the Preliminary Injunction.**

The Department's 2022 and 2023 Notices do not preclude this Court from reviewing the district court's preliminary injunction order. Defendants issued the Interpretation and Fact Sheet in June 2021.[2] Those challenged documents

---

[1] All parties now agree with the States' conclusion that this Court should dismiss Defendants' appeal of the preliminary injunction of the EEOC Technical Assistance Document as moot without vacatur of that portion of the order because EEOC chose not to appeal a separate court's vacatur of that document. States' Br. at 52-55; Reply Br. at 2 n.1.

[2] In their Reply Brief, Defendants emphasized that the United States "filed its statement of interest in the West Virginia case before the challenged documents were

constituted final agency action because they were the consummation of the agencies' decision-making process—which Defendants do not dispute, Defendants' Opening Br. at 36—and were actions by which "'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 178 (1997) (quotation omitted). Courts have authority to review these final actions.

In contrast, courts "do not have authority to review proposed agency rules." *In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015) (Kavanaugh, J.). The Department issued the 2022 and 2023 Notices a year or more after the Interpretation and Fact Sheet, neither of which was simply "a legal memorandum accompanying the proposed rule." *Id.* at 335. Defendants cannot skirt the injunction by implementing the documents through finalized versions of the two Notices.[3]

Nor will eventual finalization of the proposed rules necessarily moot this case as a whole. Replacing the Interpretation and Fact Sheet with a new rule cannot moot

---

even issued." Reply Br. at 7. To clarify, the Interpretation was published in the Federal Register on June 22, 2021, 86 Fed. Reg. 32637, and the Department circulated the Fact Sheet the next day, R. 1-4, PageID#71. But the Department had publicly released the pre-Federal Register version of the Interpretation on June 16, 2021, the day *before* the United States filed its statement of interest. *See* Department, *U.S. Dep't of Educ. Confirms Title IX Protects Students from Discrimination Based on Sexual Orientation and Gender Identity* (June 16, 2021), https://www.ed.gov/news/press-releases/us-department-education-confirms-title-ix-protects-students-discrimination-based-sexual-orientation-and-gender-identity [https://perma.cc/5ZKK-ZBP5].

[3] Defendants have not "formally repealed" the challenged documents via notice-and-comment rulemaking and have proposed rules that would rely on the documents in violation of the injunction. *Ohio v. U.S. EPA*, 969 F.3d 306, 308 (6th Cir. 2020).

this case unless the new rule gives Plaintiffs "the precise relief that petitioners requested in the prayer for relief in their complaint." *N.Y. State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (per curiam). Plaintiffs have their doubts that the new rules will, for example, declare that "Title IX does not prohibit" them "from maintaining showers, locker rooms, bathrooms, residential facilities, and other living facilities separated by biological sex or from regulating each individual's access to those facilities based on the individual's biological sex." Compl., R. 1, PageID#33. The Interpretation and Fact Sheet have committed Defendants to a different construction of Title IX.

If the Department does not "make appropriate changes" to the proposed rules, *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1142 (6th Cir. 2022), and again attempts to "create[] rights for students and obligations for regulated entities not to discriminate based on sexual orientation or gender identity," PI Order, R. 86, PageID#41, then this case remains live.

## II.    The Notices Confirm the Challenged Documents are Legislative Rules.

The 2022 and 2023 Notices confirm that the Interpretation and Fact Sheet are legislative rules issued without notice and comment. The challenged documents were legislative rules that Defendants "intend[ed] to create new law, rights or duties." *Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018) (quotation marks omitted). Further, these new rules were "necessarily legislative" because they

4

"adopt[ed] a new position inconsistent with . . . existing regulations." *Id.* (cleaned up and quotation omitted). The Department's Notices treat them as such.

As the States pointed out to the district court before it granted the preliminary injunction, the 2022 Notice expressly relies on the challenged Interpretation, which the 2022 Notice refers to as the "Notice of Interpretation." *Cf.* States' June 27, 2022 Notice of Supplemental Authority, R. 83, PageID#1227. The 2022 Notice relies on the Interpretation and its legal analysis as the final, authoritative word on the meaning of Title IX. The agency's mind appears closed on this issue.[4]

The Department begins the 2022 Notice by explaining how its Office for Civil Rights published the Interpretation in June 2021 "to state explicitly that Title IX's prohibition on sex discrimination encompasses discrimination on the basis of sexual orientation and gender identity." 87 Fed. Reg. at 41395. The 2022 Notice repeatedly relies on the Interpretation as "clarifying that Title IX's prohibition on sex discrimination encompasses discrimination on the basis of sexual orientation and gender identity" and that the Supreme Court's Title VII "reasoning in *Bostock* applies to Title IX." *Id.* at 41531; *see also id.* at 41532 (explaining again how the Interpretation "clarif[ied] that, in light of the Supreme Court's decision in *Bostock*," the Department "interprets Title IX's prohibition on sex discrimination to encompass

---

[4] *Contra McLouth Steel Prods. Corp. v. Thomas*, 838 F.2d 1317, 1323 (D.C. Cir. 1988) ("[O]riginal notice may be cured by an adequate later notice, but that curative effect depends on the agency's mind remaining open enough at the later stage.").

discrimination on the basis of sexual orientation"); *id.* at 41533 (same for discrimination on the basis of gender identity).

The 2022 Notice attempts to maintain at least the same level of consistency with the Interpretation as with federal caselaw: "The proposed regulations are consistent with OCR's 2021 Bostock Notice of Interpretation and the interpretation of Federal courts that have applied *Bostock* to Title IX." *Id.* at 41534. Indeed, with the Interpretation in hand, the 2022 Notice ignores then-existing caselaw that undermines its analysis. The Department mentions neither *Meriwether v. Hartop*, 992 F.3d 492, 510 n.4 (6th Cir. 2021) ("[I]t does not follow that principles announced in the Title VII context automatically apply in the Title IX context."), nor *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) ("[T]he rule in *Bostock* extends no further than Title VII.").

Defendants essentially agreed that the 2022 Notice's proposed rule is an attempt to "implement[] the Interpretation," PI Order, R. 86, PageID#1987, because it "cite[s], reference[s], treat[s] as binding, or otherwise rel[ies] upon" the Interpretation, Defendants' Not. of Compliance, R. 97, PageID#2058.

The Department's express reliance on the Interpretation in the 2022 Notice was no fluke. Five days after the preliminary injunction argument before the district court in this case, the United States argued that Indiana "school officials reasonably were concerned that" allowing a schoolteacher to decline the use of biologically

6

inaccurate preferred pronouns "would have resulted in an increased risk of Title IX liability." Amicus Br. for the United States, *Kluge v. Brownsburg Cmty. Sch. Corp.*, No. 21-2475, 2021 WL 5405970, at *27 (7th Cir. Nov. 8, 2021).[5]  Predictably, the federal government cited the Interpretation as the sole regulatory authority for the principle that Title IX prohibits discrimination "because of [a student's] gender identity." *Id.* at *28 (citing 86 Fed. Reg. 32,638 (June 22, 2021)).[6]

Once the district court entered its injunction, the Department no doubt realized that such blatant reliance on the Interpretation was a problem. The 2023 Notice cites the Interpretation, stating that "the Department issued a Notice of Interpretation to explain the Department's enforcement authority over discrimination based on sexual orientation and gender identity under Title IX."  88 Fed. Reg. 22865.  The next sentence declares that, "[a]gainst this backdrop and for reasons described in this preamble, the Secretary proposes to amend the Department's Title IX regulation in 34 CFR 106.41." *Id.*  But the Department attempts to soften the blow in a footnote that acknowledges the preliminary injunction and claims that "[t]his Athletics NPRM is not based on the 2021 Bostock Notice of Interpretation." *Id.* at n.6.

Nevertheless, the 2023 Notice makes little sense if the Department has not

---

[5] The Seventh Circuit recently decided *Kluge* without addressing Title IX. No. 21-2475, 2023 WL 2821871, at *26 (7th Cir. Apr. 7, 2023).
[6] *See also* Department, *Resources for LGBTQI+ Students* (Apr. 19, 2023), https://www2.ed.gov/about/offices/list/ocr/lgbt.html (continuing to provide the brief under "Recent Court Filings") [https://perma.cc/9K2V-GEUT].

*already* expanded Title IX to prohibit discrimination based on gender identity. Title IX regulations in the Code of Federal Regulations, substantively unchanged since the 1970s, have allowed schools to maintain sex-separated teams in a wide variety of contexts. *See* 34 C.F.R. § 106.41(b). A "recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport." *Id.* The only exception has been when a school offers a team for a non-contact sport "but operates or sponsors no such team for members of" the female sex, when "athletic opportunities for members of that sex have previously been limited." *Id.*

The proposed rule would add a subparagraph restricting schools from "adopt[ing] or appl[ying] sex-related criteria that would limit or deny a student's eligibility to participate on a male or female team consistent with their gender identity." 88 Fed. Reg. 22891. The terms "sex-related criteria" and "gender identity" do not appear in Title IX or the Department's Title IX regulations in the Code of Federal Regulations. Title IX simply uses the word "sex." When Congress enacted Title IX in 1972, "sex" referred to the differences in "biology and reproductive function" distinguishing males and females. *Adams v. Sch. Bd. of St. John's Cnty.*, 57 F.4th 791, 812 (11th Cir. 2022) (en banc).

The Department suggests that, under the proposed rule, States cannot "categorically exclude transgender students' eligibility to participate on male or

8

female athletic teams consistent with their gender identity" even when the students can participate on teams consistent with their sex. 88 Fed. Reg. 22866. The 2023 Rule identifies athletics laws of Idaho, Indiana, and West Virginia as targets of this regulation. *Id.* The Department treats those laws as already proscribed, even though "current regulations" in the Code of Federal Regulations "do not expressly address these distinct harms caused by sex-related criteria that limit or deny students' eligibility to participate on male or female teams consistent with their gender identity." *Id.* at 22877. The rewriting of Title IX in the Interpretation and Fact Sheet to prohibit gender identity discrimination is what the Department is really obeying.[7]

### III. The Notices are Further Support for Considering Alternative Grounds.

The 2022 and 2023 Notices' commitment to the Interpretation and Fact Sheet's approach to Title IX is yet more reason for this Court to consider the additional reasons Plaintiffs "presented to the district court" and advance on appeal "in support of the district court's preliminary injunction." *United Food & Comm. Workers Union v. Sw. Ohio Regional Transit Auth.*, 163 F.3d 341, 349 n.3 (6th Cir. 1998). The district court's notice-and-comment ruling rested on the court's agreement with the States that the Interpretation and Fact Sheet are legislative rules

---

[7] A district court may not dissolve an injunction when a federal agency promulgates a new but "arguably indistinguishable" policy that "would have the same negative impact on plaintiffs that caused them to seek an injunction in the first place." *Sherwood v. Tenn. Valley Auth.*, 46 F.4th 439, 444-45 (6th Cir. 2022).

9

that "purport[] to expand the footprint of Title IX's 'on the basis of sex' language" to encompass discrimination based on sexual orientation and gender identity. PI Order, R. 86, PageID#1982. And the challenged documents conflict with Title IX and implementing regulations that "allow for sex-separation in certain circumstances," such as in living facilities and on athletic teams. *Id.*[8]

The meaning of Title IX is also central to many of Plaintiffs' alternative APA arguments, including their arguments that the Interpretation and Fact Sheet are contrary to Title IX and violate the Spending Clause by imposing conditions that Congress did not unambiguously include in Title IX. Plaintiffs have extensively briefed their proposed alternative grounds for affirmance. *E.g.*, States' Br. at 38-46; Intervenors' Br. at 29-52. Amici on both sides provided additional briefing. This Court should address the alternative grounds for affirmance.

Respectfully submitted,

/s/ *Clark Lassiter Hildabrand*
Clark Lassiter Hildabrand
 Senior Counsel
P.O. Box 20207
Nashville, TN 37202
(615) 253-5642
Clark.Hildabrand@ag.tn.gov
*Counsel for all Plaintiffs-Appellees*
*other than the State of Arizona*

/s/ *Matthew S. Bowman*
Matthew S. Bowman
 Alliance Defending Freedom
440 1st Street, NW, Ste. 600
Washington, D.C. 20001
(202) 393-8690
mbowman@adflegal.org
*Counsel for Intervenors-Appellees*
*Ass'n of Christian Schools and A.F.*

---

[8] Even under Title VII, counsel for the plaintiffs in *Bostock*, who later advised DOJ on the guidance, argued that sex-separated living facilities are "not discriminatory because" no one is "subjected to a disadvantage." Tr. of Oral Argument at 12-13, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020) (Nos. 17-1618, 17-1623).

## CERTIFICATE OF SERVICE

I, Clark Hildabrand, counsel for Plaintiffs-Appellees other than the State of Arizona and a member of the Bar of this Court, certify that, on April 19, 2023, a copy of the foregoing supplemental letter brief was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served.

/s/ *Clark Lassiter Hildabrand*
Clark Lassiter Hildabrand
 Senior Counsel