

**U.S. Department of Justice**
Civil Division, Appellate Staff
950 Pennsylvania Ave. NW, Rm. 7511
Washington, DC 20530

Tel: (202) 514-1673

April 19, 2023

VIA CM/ECF

Deborah Hunt, Clerk of Court
U.S. Court of Appeals for the Sixth Circuit
540 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202

    RE:   *State of Tennessee, et al. v. Department of Education et al.*, No. 22-5807 (argument scheduled for April 26, 2023)

Dear Ms. Hunt:

This letter is in response to the Court's order of April 10, 2023, directing the parties to address how, if it at all, this case is affected by the Department of Education's Notices of Proposed Rulemaking under Title IX of the Education Amendments of 1972.

1. On July 12, 2022, the Department published in the Federal Register an NPRM in which it proposed to amend Title IX's implementing regulations in various ways. *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 87 Fed. Reg. 41,390 (July 12, 2022) (July 2022 NPRM).

Among other things, the Department proposed adding a new regulatory provision, 34 C.F.R. § 106.10, to clarify that "Title IX bars all forms of sex

discrimination, including discrimination based on … sexual orientation[] and gender identity." 87 Fed. Reg. at 41,532; *see id.* at 41,571 (proposed regulatory text). The Department explained that "Title IX's broad prohibition on discrimination 'on the basis of sex' under a recipient's education program or activity encompasses" discrimination based on sexual orientation and gender identity because such discrimination "depend[s], at least in part, on consideration of a person's sex." *Id.* at 41,532. The Department further explained that the proposed regulatory provision would "more closely align with Title IX's text, purpose, and principles articulated in Federal case law," *id.* at 41,534, including the Supreme Court's decision in *Bostock v. Clayton County*, *see id.* at 41,532 (citing 140 S. Ct. 1731 (2020)).

The Department also proposed amending an existing regulatory provision, 34 C.F.R. § 106.31, to "[c]larify that, unless otherwise provided by Title IX or the regulations, a recipient must not carry out any otherwise permissible different treatment or separation on the basis of sex in a way that would cause more than de minimis harm, including by adopting a policy or engaging in a practice that prevents a person from participating in an education program or activity consistent with their gender identity." 87 Fed. Reg at 41,391; *see id.* at 41,571 (proposed regulatory text). The Department explained that under Title IX and its implementing regulations there are "limited contexts in which recipients are permitted to employ sex-specific rules or to separate students on the basis of sex." *Id.* at 41,534. The Department further explained that "to the extent separation or different treatment based on sex imposes

no harm or only de minimis harm, it will not amount to discrimination on the basis of sex under Title IX." *Id.* The Department clarified, however, that "prohibited harm may result when a recipient … discriminates against one or more protected individuals by subjecting them to more than de minimis harm on the basis of sex" and that "a recipient subjects students to such harm when it bars them from accessing otherwise permissible sex-separate facilities or activities consistent with their gender identity." *Id.* at 41,535 (citations omitted). At the same time, the Department recognized that "there are circumscribed situations in which Title IX or the regulations permit a recipient to separate students on the basis of sex, even where doing so may cause some students more than de minimis harm." *Id.* at 41,536 (citing 20 U.S.C. §§ 1681(a)(5), (6), 1686).

The Department stated in the July 2022 NPRM that it did not propose any particular changes to Title IX's regulations governing athletics. *See* 87 Fed. Reg at 41,537. The Department explained that it planned "to address by separate notice of proposed rulemaking the question of what criteria, if any, recipients should be permitted to use to establish students' eligibility to participate on a particular male or female athletics team." *Id.*

Relevant here, the July 2022 NPRM—which was issued before the district court's preliminary injunction ruling, *see* Op. 1, R. 86, Page ID # 1942—included a brief discussion of the Notice of Interpretation challenged by the States in this

litigation. *See, e.g.*, 87 Fed. Reg at 41,531 (citing 86 Fed. Reg. 32,637 (June 22, 2021)).[1] The discussion was included as part of the background to the Department's regulatory proposals. *See id.* at 41,529-531 (providing detailed history of the Department's understanding of Title IX). The Department explained that the Notice of Interpretation "clarif[ied]" the Department's understanding that "Title IX's prohibition on sex discrimination encompasses discrimination on the basis of sexual orientation and gender identity," but that it "did not address how coverage of sexual orientation and gender identity discrimination affects obligations under the current Title IX regulations." *Id.* at 41,531. The Department did not purport to rely on the Notice of Interpretation as authority for the proposed regulatory amendments in the July 2022 NPRM.

The July 2022 NPRM was subject to a 60-day comment period, which closed on September 12, 2022. 87 Fed. Reg at 41,390. The Department has not yet issued a final rule.

2. On April 13, 2023, the Department published in the Federal Register a separate NPRM in which it proposed to amend Title IX's regulations regarding athletics. *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance: Sex-Related Eligibility Criteria for Male and Female Athletic Teams*, 88 Fed. Reg. 22,860 (Apr. 13, 2023) (Athletics NPRM).

---

[1] The July 2022 NPRM did not discuss the Dear Educator Letter or Fact Sheet also at issue in this litigation.

In the Athletics NPRM, the Department proposed amending the regulatory provision governing prohibited sex discrimination in athletics, 34 C.F.R. § 106.41, to provide "a regulatory standard under Title IX that would govern a recipient's adoption or application of sex-related criteria that would limit or deny a student's eligibility to participate on a male or female athletic team consistent with their gender identity." 88 Fed. Reg. at 22,860. The Department explained that "the proposed regulation would not prohibit a recipient's use of sex-related criteria altogether." *Id.* Rather, the Department proposed that "if a recipient adopts or applies sex-related criteria that would limit or deny a student's eligibility to participate on a male or female athletic team consistent with their gender identity, those criteria must, for each sport, level of competition, and grade or education level: (i) be substantially related to the achievement of an important educational objective, and (ii) minimize harms to students whose opportunity to participate on a male or female team consistent with their gender identity would be limited or denied." *Id.* The Department explained that the proposed standard was consistent with both the current regulatory framework "for providing overall equal athletic opportunity regardless of sex for students who seek to participate in a recipient's athletic program," *id.* at 22,866, and the "statute's underlying goals," *id.* at 22,877.

Again, as relevant here, the Department included a short discussion of the challenged Notice of Interpretation as part of the background to the regulatory proposal. 88 Fed. Reg. at 22,865. The Department noted the district court's

5

preliminary injunction ruling and explained that "[t]his Athletics NPRM is not based on the … Notice of Interpretation." *Id.* at 22,865 n.6.[2]

The Athletics NPRM is subject to a 30-day comment period. 88 Fed. Reg. at 22,860.

3. The July 2022 NPRM and Athletics NPRM do not affect this case. As proposed rules, the NPRMs are "just [] proposal[s]." *In re Murray Energy Corp.*, 788 F.3d 330, 334 (D.C. Cir. 2015). They "do not impose any legal obligations or prohibitions" on anyone. *Id.* at 336. "Any such legal obligations or prohibitions will be established, and any legal consequences for violating those obligations or prohibitions will be imposed, only after" and only if the Department "finalizes [the] rule[s]." *Id.*; *see also id.* at 334 (explaining that courts thus "do not have authority to review proposed agency rules"); *cf. BellSouth Corp. v. FCC*, 96 F.3d 849, 852 (6th Cir. 1996) ("To vacate the rule before the rulemaking process has run its course would constitute a usurpation of the administrative process."). Because the NPRMs on their own lack any binding legal effect, they do not affect the issues before this Court or the case more broadly.

4. To the extent the July 2022 NPRM and Athletics NPRM have any relevancy to this case, they illustrate that the district court erred in concluding that (1) the States have standing to challenge the informational documents at issue here, (2) the

---

[2] Like the July 2022 NPRM, the Athletics NPRM did not discuss the Dear Educator Letter or Fact Sheet.

6

documents were reviewable final agency action, and (3) the States are likely to prevail on their claim that the documents are legislative rules subject to notice and comment rulemaking.

    a. As the government has explained, the abstract sovereign harms alleged by the States based on "arguable" conflicts between a handful of their laws and the interpretation of Title IX set out in the challenged informational documents are insufficient to establish standing. Opening Br. 22-30. The speculative nature of those alleged harms is underscored by the NPRMs. As the Department explained, while the informational documents "clarif[ied]" its understanding that "Title IX's prohibition on sex discrimination encompasses discrimination on the basis of sexual orientation and gender identity," they "did not address how coverage of sexual orientation and gender identity discrimination affects obligations under the current Title IX regulations." 87 Fed. Reg at 41,531. Indeed, whereas the NPRMs contain extensive discussion concerning how the proposed rules, if finalized, would affect regulated entities' obligations under Title IX and its implementing regulations, *see, e.g.*, *id.* at 41,531-537; 88 Fed. Reg. at 22,866-877, the informational documents contain nothing of the sort. Thus, any arguable conflict between the challenged documents and the handful of laws identified by the States is too speculative to establish Article III standing. *Cf. Arizona v. Biden*, 40 F.4th 375, 385 (6th Cir. 2022) (explaining that Article III's "foundational standing requirements" apply to "private and public litigants alike").

The NPRMs further illustrate that the States' standing theory fails for the independent reason that any sovereign injury suffered by the States was neither caused by the challenged informational documents nor redressable by an injunction prohibiting their implementation. Opening Br. 30-31. Any such injuries would flow from the obligations imposed by Title IX and its implementing regulations, not from the informational documents. The July 2022 NPRM, for example, makes clear that its proposed regulatory amendments reflect "Title IX's text, purpose, and principles articulated in Federal case law." 87 Fed. Reg. at 41,534. It nowhere suggests that the informational documents provide independent legal authority for the proposed regulatory amendments.[3] Accordingly, an injunction barring the documents' implementation would do nothing to redress the States' supposed harms.

b. The NPRMs also demonstrate that the informational documents are not final agency action subject to judicial review. *See* Opening Br. 36-42. Like the proposed rules, the informational documents do "not impose liability, determine legal rights or obligations, or mandate, bind, or limit other government actors." *Parsons v. U.S. Dep't of Justice*, 878 F.3d 162, 169 (6th Cir. 2017). As the Department explained in

---

[3] The Athletics NPRM was issued after the district court's injunction in this case and because the Department did not rely on the informational documents in issuing that NPRM, *see* 88 Fed. Reg. at 22,865 n.6, there was no conflict with the government's notice of compliance, *see* Notice, R. 97, Page ID # 2057. Although the July 2022 NPRM predates the district court's injunction, the Department also did not suggest that the informational documents provided authority for the proposed regulatory amendments.

8

the July 2022 NPRM, while the documents informed the Department's "investigation of complaints," they did not "dictate the outcome in any particular case or set of facts," much less "address" regulated entities' "obligations under the current Title IX regulations." 87 Fed. Reg. at 41,531. What's more, a simple comparison between the informational documents and the NPRMs—which cover several hundred pages of the Federal Register and which, if finalized, *would be* final agency action—shows that in form, scope, and purpose, the informational documents lack the "telltale signs" of having "direct or appreciable legal consequences" and thus being reviewable agency action. *Arizona*, 40 F.4th at 388 (quotation marks omitted).

    c. The Department's NPRMs also make clear that the informational documents are not legislative rules subject to the requirements of notice and comment rulemaking. Opening Br. 47-55; *see* 5 U.S.C. § 553(b)(A) (providing that only legislative rules are subject to those procedural requirements). While the NPRMs' proposed regulatory amendments, if finalized, would be legislative rules that would "have the force and effect of law," "create new law, rights or duties," and "effect a substantive change in [Title IX's] regulations," *Tennessee Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018) (cleaned up), the challenged informational documents do none of those things. Instead, the documents "simply state[] what the administrative agency thinks the statute means." *Id.* (quotation marks omitted). Such informational documents, if they are rules at all, *see* 5 U.S.C. § 551(4), are not legislative rules required to go through notice and comment rulemaking. *Id.*; *cf. POET Biorefining, LLC*

9

*v. EPA*, 970 F.3d 392, 408 (D.C. Cir. 2020) ("[E]ven a consequential, conduct-altering rule remains interpretive so long as it can fairly be viewed as interpreting—even incorrectly—a statute or regulation." (quotation marks omitted)).

\*\*\*

The States no doubt "are champing at the bit to challenge" the Department's understanding of Title IX's prohibition on sex discrimination. *In re Murray Energy Corp.*, 788 F.3d at 333. But that provides no grounds to disregard bedrock jurisdictional and administrative law principles that preclude judicial review of the informational documents challenged here.

                                         Sincerely,

                                          s/ *David L. Peters*
                                          David L. Peters
                                          U.S. Department of Justice
                                          Appellate Staff, Civil Division

cc (via CM/ECF): Counsel of Record